BOARD OF COUNTY COMMISSIONERS OF KAY COUNTY *et al.* v. SMITH *et al.*

No. 4009.    Opinion Filed April 13, 1915.

(148 Pac. 111.)

1.    **APPEAL AND ERROR—Joint Appeal—Dismissal.** In an action by taxpayers against the board of county commissioners and county treasurer to enjoin payment of a warrant given for material and work in constructing a bridge, where the bridge company holding the warrant is allowed to interplead and make itself a party defendant, and judgment is rendered enjoining payment of the warrant and the assignment thereof, and both the board of county commissioners and the bridge company appeal from such judgment, and the records show the appeal and proceedings in error in this court had been jointly prosecuted by the board and bridge company, as plaintiffs in error, **held,** a

motion by the board of county commissioners to dismiss the appeal on the ground it did not authorize an appeal will be refused, where it is filed after the expiration of the time when the bridge company could appeal alone and make the board defendant in error.

2. **BRIDGES — Counties — Contract of County Commissioners — Validity—Injunction.** Where the county commissioners in November, 1910, caused a bridge to be constructed over a principal stream under a contract made and signed by them as individuals, and without any attempt to comply with section 7861, Snyder's Comp. Laws 1909, such action of the commissioners is void, and taxpayers of the county may enjoin payment of a warrant issued by the board of county commissioners to pay for such bridge.

3. **SAME—Evidence—Payment—Injunction—Judicial Notice.** The courts will, as a rule, take judicial notice of the principal water courses within the limits of their respective jurisdictions, and though the county commissioners, while in session as a board in 1910, agreed and decided that a stream over which a bridge was to be constructed was not a principal stream when in fact it was such, such decision was not conclusive, though the commissioners acted in good faith (and especially is this true where, as in this case, no motion, resolution, order, or minute was made or directed by the board to be made in the minutes or of record relative to such discussion, agreement. or decision) ; and in such case, the action of the commissioners causing a bridge to be constructed across a principal stream without advertising or letting the contract therefor to the lowest bidder. and otherwise complying with section 7861, Snyder's Comp. Laws 1909, is void; and payment for such bridge may be enjoined in a suit by taxpayers for that purpose without appealing from the action of the board issuing a warrant to pay therefor.

4. **SAME—Construction Under Void Contract—Liability for Payment—Acceptance and Use—Effect.** Where a bridge has been constructed by a bridge company, under a void contract with the county commissioners, and such bridge is accepted by the commissioners in a letter signed by them as individuals and addressed to the bridge company, and at a date when it is not shown the commissioners were in session as a board, such acceptance and the use of the bridge by persons traveling the road on which the bridge is located will not render the county liable for the value thereof.

5. **COUNTIES—Injunction by Taxpayers—Laches.** The petition filed in the district court March 13, 1911, which showed plaintiffs knew on January 3d of that year that the board of county commissioners had issued the warrant for $5,000 to pay for the bridge in question, which at that time was in process of construction, was not subject to general demurrer on the ground of apparent laches of plaintiffs.

(Syllabus by the Court.)

*Error from District Court, Kay County;*
*W. M. Bowles, Judge.*

Injunction by Frank A. Smith and another against the Board of County Commissioners of Kay county and others. Judgment for plaintiffs, and defendants bring error. Affirmed.

*Sam K. Sullivan, H. S. Braucht, B. C. Wieck,* County Attorney, and *Burford & Burford,* for plaintiffs in error.

*John S. Burger* and *H. S. Gurley,* for defendants in in error.

BROWN, J. Defendants in error commenced this action in March, 1911, in the district court of Kay county, as taxpayers against the board of county commissioners and treasurer of said county, to enjoin the payment of a warrant for $5,000 issued by the board of county commissioners to the Canton Bridge Company, a corporation of Ohio, in payment for the construction of a bridge by the bridge company over the Chikaskia river in said county, alleging that said warrant was illegal and void, and that the board of county commissioners and treasurer were threatening to pay the same and would do so unless restrained.

The specific grounds alleged in the petition to show that the warrant in question was illegal and void are substantially that the Chikaskia river, upon which and over which the said bridge was constructed, is a principal stream flowing through Kay county, and was such at all times thereinmentioned, and that in November, 1910, G. Alberti, Jr., Thomas McQuirk, and Charles Mayer, county commissioners of Kay county, entered into a pretended contract with the Canton Bridge Company for the construction of a bridge over said Chikaskia river in said county, wherein said commissioners, pretending to act as a board of county commissioners of said county, agreed to pay the Canton Bridge Company the sum of $5,500, 75 per cent. of which

sum was to be paid on delivery of material at nearest railroad station, and the balance on completion of the bridge, and the bridge company agreed to furnish material  and complete and finish the construction thereof on or before the 15th day of February, 1911.   The petition alleges that at the time the contract above mentioned was made by the county commissiner, viz., November 18, 1910, the board was not in session; that the county commisisoners or the board of county commissioners did not employ any surveyor to make a survey and measurements of the banks of said stream or the length of the span and approaches connected with said bridge or the height and size of piers therein, or an estimate of the cost of construction, or drawings, plans, and specifications of same; and did not make or keep a statement of such estimates, plans, and specifications on file with the county clerk; and did not keep the same open to inspection; and did not advertise in any manner or give any notice that such contract would be let, or that said commissioners expected to, contemplated, or would enter into a contract for the construction of such bridge; and that no notice thereof was published in any newspaper in Kay county, although a number of papers having a general circulation were published therein at said date.   It is further alleged that no sealed bids were filed with the county clerk, and that there was no competition or chance for competition for a construction of said bridge, and that said county commissioners had no authority to make said contract for the construction of said bridge on behalf of said county, and that the contract was therefore illegal and void.   It is further alleged that plaintiffs had no knowledge or opportunity to know that said contract would be let or entered into by the county commissioners, or that they or the board of county commissioners contemplated such action, and did not learn the contract had been entered into until more than 20 days after the pretended making of the same; that the contract was entered into secretly, with the fraudulent

intent and design·to keep plaintiffs and other taxpayers of the county from knowing the county commissioners or the board thereof had made or contemplated making the same, and to prevent plaintiffs and other taxpayers from appealing from the action of the commissioners to the district court of Kay county; and that thereby plaintiffs and other taxpayers were prevented from taking any action to prevent said contract from being entered into. It is alleged that on January 2, 1911, without any authority to do so, G. Alberti, Jr., chairman of the board of county commissioners, and W. E. Shimm, county clerk of Kay county, executed and delivered to the Canton Bridge Company a pretended warrant for $5,000, in the usual form of legal warrants, and that on or about the 3d day of January, 1911, the Canton Bridge Company presented said warrant to the county treasurer of Kay county for payment, and that payment was refused for want of sufficient funds by said treasurer, but was registered by him as a valid claim against said county, and that the board of county commissioners and said county treasurer are threatening to pay said warrant, to the damage of plaintiffs and other taxpayers in said county. The petition further alleges that prior to January 2, 1911, when said warrant for $5,000 was issued, the board of county commissioners had drawn warrants on said fund and entered into obligations against the same for more than 80 per cent. of said fund, and for that reason the warrant in question was void at the time of its issuance. The petition further alleges that plaintiffs have no adequate remedy at law, and prays for injunction perpetually enjoining the payment of said warrant, or any part thereof.

A temporary injunction issued, and in June, 1911, after defendant board of county commissioners' demurrer to petition was overruled, it answered, admitting they were officials of Kay county, as alleged in the petition, and that plaintiffs were taxpayers in said county, and that George Alberti, Jr., Thos. McQuirk, and Charles Mayer were the

duly elected and qualified and acting members of the board of county commissioners of Kay county, Okla., for two years prior to January 9, 1911. The answer alleges that the contract mentioned in plaintiffs' petition was legally entered into between George D. Alberti, Jr., Thomas McQuirk, and Charles Mayer, then constituting the board of county commissioners of Kay county, and the Canton Bridge Company on or about the 18th day of November, 1910, and was for the best interests of the citizens of Kay county, and was thereafter ratified by the defendants, the present board of county commissioners of said county. It is further alleged that the plaintiffs, before the construction of the bridge in question was begun, knew said contract was entered into and that the bridge would be built, and remained silent while the bridge was in course of construction and made no objection thereto until after its completion and the acceptance thereof by the board of county commissioners, and that the filing of the present suit was the first notice defendants had of plaintiffs' objection to said bridge or the contract therefor, and that by reason of the silence and nonaction of plaintiffs, the condition of the defendants had been materially altered and affected, and that by reason thereof plaintiffs are estopped from prosecuting this suit.

On September 4, 1911, leave of the court was granted to Canton Bridge Company to make itself a party defendant in said cause, and on the same day it filed its answer in said cause, denying generally the allegations in the petition not therein admitted, and alleging it was the owner and holder of the warrant for $5,000, payment of which was sought to be enjoined, that the same was legally issued, and that there was money in the county treasury with which to pay said warrant. The bridge company specifically denied that the Chikaskia river was a principal stream, and said answer was otherwise, in substance, the same as the answer of the original defendants in said cause.

On the same day plaintiffs filed their reply to the answer of the board of county commissioners and county treasurer, and to the answer of the Canton Bridge Company, denying the allegations therein contradictory to the allegations in plaintiffs' petition, and praying for judgment requiring the bridge company to surrender said warrant into court, and that the same be canceled and held void, and that the bridge company be enjoined from assigning said warrant.

The case was tried to the court upon the issues above stated, and on October 13, 1911, judgment was rendered perpetually enjoining the board of county commissioners and county treasurer from payment of the warrant in question, also restraining the Canton Bridge Company from assigning the warrant, and in favor of plaintiffs for costs. All the defendants excepted to the judgment of the court, and in due time motions for a new trial were filed by the board of county commissioners and the county treasurer and the interpleader, the Canton Bridge Company, alleging errors committed in the trial and in the final judgment rendered by the court.

On December 4, 1911, the court in one order overruled both motions for a new trial, to which action all the defendants excepted, and gave notice of their intention to appeal to the Supreme Court, and it was ordered by the court that the defendants and each of them be allowed 90 days in which to make and serve case-made, plaintiffs 10 days to suggest amendments, and case-made ordered to be settled on five days' notice in writing by either party.

It is to be noted that the answer of the defendant the board of county commissioners and the county treasurer, and the motion for a new trial by said parties, are signed by B. C. Wieck, county attorney, and that the final order of the court overruling the motion for a new trial and giving time to perfect appeal, dated December 4, 1911,

is O. K.'d by H. S. Gurley and John S. Burger, attorneys for plaintiffs, and by Sam K. Sullivan, Burford & Burford, H. S. Braucht, and B. C. Wieck, attorneys for defendants; also immediately preceding the trial judge's certificate of settlement is a stipulation, signed by B. C. Wieck, county attorney, and by the other counsel for both plaintiffs and defendants, including the bridge company, waiving a right to suggest amendments to the case-made and agreeing that the same might be settled by the court; and in the trial judge's settlement of the case-made, dated March 5, 1912, it is stated that the defendants in the case appear by their attorneys and by stipulation, consenting that the case-made may be settled, etc.

On May 25, 1912, the petition in error with case-made attached was filed in this court, styled "the Board of County Commissioners of Kay County, Oklahoma, L. J. Burkhalter, L. A. Cann, and H. C. Scott, as members of the Board of County Commissioners of said Kay County, Oklahoma, H. M. Zeigler, County Treasurer of Kay County, Oklahoma, and the Canton Bridge Company, a corporation, plaintiffs in error, v. Frank A. Smith and J. F. Williams, defendants in error." On August 23, 1912, plaintiffs in error's brief was filed in this court, purporting to be signed by B. C. Wieck, county attorney, and Sam K. Sullivan, H. S. Braucht, Burford & Burford, attorneys for plaintiffs in error. On January 5, 1915, more than two and one-half years after the case reached this court, the board of county commissioners of Kay county filed in this court its motion to dismiss the appeal or proceedings in error, alleging as grounds therefor that the board never did join in the appeal herein, and never took any steps to perfect such appeal, and never intended to appeal from the decision of the district court, and never had any knowledge that any one had ever attempted to appeal in the board's name until long after the appeal had been lodged in this court, and alleging that said appeal was taken in the name of the

board of county commisisoners by the then county attorney of Kay county (B. C. Wieck), and that his action therein was without the board's knowledge or consent and against its interest and orders in the matter, and that immediately upon learning of said facts the board, by resolution, ordered the county attorney (B. C. Wieck) to dismiss said pretended appeal, and that, upon learning thereafter that B. C. Wieck had disregarded such instructions to dismiss, the board then again ordered John S. Burger, the succeeding county attorney of said county, to dismiss said appeal; that said board of county commissioners had never consented to said appeal, had never objected to the decision or judgment of the court below, but, on the contrary, had always believed and still believed that said judgment of the district court of Kay county was just, legal, and right and should be the final judgment. Motion to dismiss is signed by S. C. Duvall, county attorney of Kay county, and the board of county commissioners, by L. A. Cann, chairman, and attached thereto and made a part thereof is a copy of a resolution passed by the board of county commissioners June 3, 1912, declaring that the board never publicly or privately authorized any one to appeal from the decision of the district court in said cause, and under date of June 12, 1912, is a copy of a resolution of the board of county commissioners directing B. C. Wieck, then county attorney of Kay county, to dismiss the appeal, and under date of November 4, 1914, is a copy of a resolution of the board of county commissioners directing the county attorney to dismiss this appeal, and under date of December 8, 1914, a copy of a resolution ordering that the expenses of Frank A. Smith and J. H. Williams, plaintiffs in the Canton Bridge Company case, be paid by the county, and that the defense of said action in the Supreme Court be carried on by the county attorney with their attorneys; and under date of December 17, 1914, is a copy of a resolution by the board of county commissioners ordering that the last reso-

lution above mentioned be rescinded, and that the county pay no part of the expense of said litigation.

On January 7, 1914, the Canton Bridge Company, plaintiffs in error, filed in this court a response to the motion of the board of county commissioners to dismiss, resisting said motion, and as a ground therefor alleged the case was duly appealed and filed in the Supreme Court within six months from December 4, 1911, the date the motion for a new trial was overruled, and alleged that the expense of the appeal, transcript, brief, and costs were paid by plaintiff in error the Canton Bridge Company, in which the county joined as a nominal appellant, by and with the consent of its county commissioners and through its county attorney (B. C. Wieck), who, it is alleged, was orally authorized to join in said appeal as set out in the affidavit of the said B. C. Wieck and made Exhibit A to said resistance. It is further alleged that the Canton Bridge Company had no knowledge that the board of county commissioners would attempt to repudiate its oral authority given to said Wieck, and that there was no action taken by said board of county commissioners until after the six months expired in which the plaintiff in error the Canton Bridge Company could have completed its appeal by making the said board of county commissioners defendants in error, and thereby perfecting said appeal, and that the Canton Bridge Company relied upon the oral authority given by the said board of county commissioners to the county attorney (B. C. Wieck), and relied upon the authority of the said county attorney in perfecting said appeal, and that if it had had any knowledge that the board of county commissioners would take any such action, it (the Canton Bridge Company) would have made the said board a party defendant in error, and thereby protected its appeal to this court. Other reasons were stated in the response for resisting the

194    SUPREME COURT OF OKLAHOMA.

Board of County Commissioners of Kay County et al. v. Smith et al.

motion to dismiss which we do not consider it necessary to mention.

This case was submitted to this court on the 18th day of January, 1915, the entire case, including the motion to dismiss, to be considered together.

The motion of the board of county commissioners to dismiss this cause will be overruled, for the reason that it appears from the record that upon the rendition of judgment by the court below the defendant board of county commissioners excepted thereto, thereafter filed its motion for a new trial, and upon the overruling of the motion excepted to such action of the court and gave notice of its intention to appeal to this court, and was granted time, together with the Canton Bridge Company, to make and serve case-made; and thereafter, by and through its proper officer, the county attorney, the board stipulated and agreed to settlement of the case-made herein, and no action was taken in this court by the board manifesting its intention not to appeal or its objection thereto until it was too late for plaintiff in error the Canton Bridge Company to make said board a defendant in error herein, and to allow said motion to dismiss at this time would work an injustice and wrong upon the rights of the Canton Bridge Company without fault on its part.

We now come to the consideration of the case upon its merits. Counsel for plaintiffs in error group the questions presented in the petition in error under three heads, namely: (1) Error in overruling the demurrer to the petition. (2) Error in overruling the demurrer to the evidence. (3) Error in overruling the motion for a new trial.

All the errors assigned were embraced in the motion for a new trial, and counsel consider and discuss the case under four propositions of law, as follows:

First. "The county commissioners being vested by law with the power to build bridges over the streams of the county are vested with the power to determine what streams therein are or are not principal streams, and in the absence of fraud their decision is conclusive."

Second. "An irregularity in the execution of a contract does not render it void where the power of contract exists, but is irregularly exercised, and in such case acceptance and using of the thing contracted for will ratify the contract."

Third. "A failure to appeal from the action of the board of county commissioners, where the action is voidable but not void, precludes the resort to injunction, since an adequate remedy at law exists."

Fourth. "Where goods are furnished to a county and the power to buy such goods exists, the acceptance and use of such goods will render the county liable for the reasonable value thereof."

The determination of the legal propositions above stated will settle the question of whether or not the petition of plaintiffs below was subject to defendants' demurrer thereto on the ground it did not state a cause of action. Under the pleadings, the question whether the Chickaskia river, over which the bridge in controversy was constructed, was and is a principal stream, is the primary issue for our determination. Upon the trial both plaintiffs and defendants introduced evidence as to the dimensions and character of the Chikaskia river, which showed that it rises in Pratt county, Kan., and flows through Kingman and Sumner counties in Kansas, and enters Kay county, Okla., just east of the northwest corner, and flows about 30 miles through that county; that the river is from 400 to 600 feet wide, and its banks from 30 to 35 feet high; that the water flows therein all the year, and the flow is from 25 to 30 feet wide at low-water mark and from a mile and a half to two miles wide at flood tides. We think this evidence alone was sufficient

warrant for the finding of the trial court that the Chikaskia river was a principal stream.

But in determining this question, was the court below or is this court limited to the testimony of witnesses upon the trial of this case? In 17 Am. & Eng. Ency. of Law (2d Ed.), p. 509, it is said:

"The courts will, as a rule, take judicial notice of the principal waters and water courses within the limits of their respective jurisdictions."

Numerous authorities are cited as supporting the rule stated.. We are inclined to agree with the rule thus announced, and applying it to this case, we think it is a matter of judicial knowledge that the Chikaskia river was and is a principal stream in Kay county, as contemplated by the statute, and it would seem the board of county commissioners so considered it when they first determined to build the bridge in question. The minutes of the proceedings of the board show that on October 12, 1910, the county clerk was ordered and directed to advertise, according to law, for the construction of this and other bridges in Kay county, and on November 11, 1910, the minutes show the board was in session and that that was the day set for receiving bids on the various bridges advertised for; that it was ordered by the board that no bids should be opened for the reason that they were not advertised according to law, and the county clerk was ordered to return all bids forthwith. The minutes of the board fail to show any other proceedings relating to the bridge in question until January 2, 1911, when the minutes show the Canton Bridge Company was allowed a claim of $5,000 for bridge material. It was admitted on the trial by counsel for defendants below that no contract was made by the board of county commissioners for the construction of the bridge in question and that there was no advertisement therefor; hence, it is contended by plaintiffs below

that the construction of this bridge was in open violation of the statute authorizing bridges across principal streams. If the board was without authority to construct the bridge in question, it follows that it had no authority to allow the claim of the Canton Bridge Company for the bridge material, or to issue the warrant in payment therefor which was enjoined by the judgment of the trial court. It is not contended by counsel for plaintiffs in error that at the time the bridge in question was constructed the board of county commissioners was authorized to build bridges over principal streams without advertising and contracting therefor when the stream was known to be a principal stream; but it is urged by counsel for plaintiffs in error that:

"The county commissioners, being vested by law with power to build bridges over streams of the county, are vested with the power to determine what streams therein are or are not principal streams, and in the absence of fraud, their decision is conclusive."

We cannot agree with this contention of counsel; the Chikaskia river being a principal stream, the law is mandatory prohibiting the board of county commissioners from making a contract for bridges thereon, except in the manner provided by statute. The powers and authority of the board of county commissioners, at the time this bridge was constructed, are found in Comp. Laws 1909, and, so far as applicable to the question now under consideration, are as follows:

Section 1583 [Rev. Laws 1910, section 1497]. "That each organized county within this state shall be a body corporate and politic, and as such shall be empowered for the following purposes: * * *

"4. To make all contracts and do all other acts in relation to the property and concerns of the county necessary to the exercise of corporate or administrative power."

"5. To exercise such other and further powers as may be especially provided for by law."

Section 1585 [Rev. Laws 1910, sec. 1499]. "The powers of the county as a body politic and corporate shall be exercised by a board of county commissioners."

Section 7860. "The board of county commissioners in each county shall have sole control of all bridges more than twenty feet long, and shall contract for the erection and maintenance of the same as hereinafter provided."

Section 7861. "That no contract shall be let by the board of county commissioners for the building of any bridge across any principal stream until a surveyor shall be employed by the board to make all necessary measurements between banks, * * * together with an itemized estimate of cost of construction, and all necessary drawings, plans and specifications and file the same immediately upon the completion thereof with the county clerk. * * * And the board of county commissioners shall advertise for four consecutive weeks in some newspaper printed in such county, a notice that such contract will be let to the lowest responsible bidder at the office of the county clerk of such county, within ten days after the last publication of such notice. * * * All bids to be sealed and filed with the county clerk on or before the date stated in such notice for the closing of bids. On the day following the day stated in such notice for the closing of bids the board of county commissioners shall, at the office of the county clerk, open such bids and award such contracts to the lowest responsible bidder for any such bridge or bridges."

The board of county commissioners is not a judicial tribunal with powers to interpret statutes of the state, whose decisions have a conclusive effect, and if the board of county commissioners of Kay county decided the Chikaskia river was not a principal stream, when in fact it was such, their decision was void.

In the case of *Allen et al. v. Board of County Commissioners of Pittsburg County*, 28 Okla. 773, 116 Pac. 175, it is said:

"It is a settled rule that the grant of powers of boards of county commissioners must be strictly construed, because when acting under special authority they must act

strictly on the conditions under which the authority is given; that they can exercise only such powers as are specifically granted, or as are incidentally necessary for the purpose of carrying into effect such powers; and where the law prescribes a mode which they must pursue in the exercise of such powers, it, as a rule, excludes all other modes of procedure."

See, also, *National Drill & Mfg. Co. v. Davis,* 29 Okla. 633, 120 Pac. 976; *Harlow v. Board of County Commissioners of Payne County et al.,* 33 Okla. 360, 125 Pac. 449.

In *Sheely v. People,* 54 Colo. 136, 129 Pac. 201, paragraph 5 of the syllabus, it is said:

"Since the general scope of the duties of county commissioners is the administration of the county affairs, they are 'administrative officers' rather than judicial or legislative officers."

In *Howell v. Board of Co. Com'rs of Ada Co.,* 6 Idaho 154, 53 Pac. 542, syllabus, paragraph 2, it is said:

"Boards of county commissioners are not clothed with judicial functions, and are not authorized to pass upon the validity of a statute."

In *Ex parte Hewitt et al.,* 76 Conn. 685, 58 Atl. 231, it is said:

"County commissioners are administrative officers."

In *Harlow v. Board of County Commissioners of Payne County, supra,* the board was proceeding to contract for the erection of a bridge across a river in that county, and an injunction was brought by a taxpayer to restrain the letting of the contract for the bridge contemplated, on the ground that it was to be located within six miles of another bridge on the same river. The act of the Legislature approved March 12, 1903 (Sess. Laws 1903, p. 244; section 7881, Comp. Laws 1909), authorizing construction of bridges, was then in force. Section 2 of that act provides:

"No bridge shall be built on any such river * * * nearer than six miles to any other bridge located and built" thereon.

The act did not provide whether the distance should be ascertained by a direct line from one bridge to the other, or by the course and meanderings of the river, or by the traveled route and road from one bridge to another. The board construed the statute to mean within six miles of the traveled road from one crossing or bridge to the other, which in that case was less than six miles upon a direct line from another bridge on the same river. There was no claim that the board did not act in good faith. Justice Hayes, for this court, at page 357 of 33 Okla., at page 451 of 125 Pac., says:

"It is also urged that the distance from the location of the proposed bridge to the nearest bridge is a question of fact which the board of county commissioners was empowered to determine; and that their determination cannot be reviewed in this proceeding. But, if any mistake was made by the board of county commissioners, it is not a mistake of fact, but a mistake in the construction of the statute defining its powers. The controversy revolves around what method of measuring the distance is contemplated and authorized by the statute. After the method of measurement is determined, there is no controversy about whether the construction of the proposed bridge is without or within the power of the board, except as that power is affected by the second proposition to be considered later. A board of county commissioners cannot misconstrue a statute as granting to it a power not granted, and thereby foreclose the court from restraining it within the jurisdiction conferred upon it, when the application is made therefor by an injured party."

The propositions involved in the Payne County Case and the instant case are not altogether dissimilar. In that case the board of county commissioners was left to determine how the Legislature intended the distances between bridges should be determined; that is, whether by air line,

the meanderings of the stream, or the traveled road from one bridge or crossing to another. In the instant case the law prohibited the letting of contracts for bridges across a principal stream without competitive bids, and it is no more certain as to what is meant by a principal stream than the law of 1903 was as to how the Legislature intended the distance between bridges should be determined.

In the Harlow Case the judgment of the district court, which, in effect, sustained the decision by the board of county commissioners, was by this court reversed. The proposition announced in the Harlow Case as to the effect of a misconstruction of a statute by the board of county commissioners is applicable in this case, and if it were not so, then whether or not any river is a principal stream would forever be in a state of uncertainty, since the county commissioners of one year might think it a principal stream and let its contracts for bridges thereon under competitive bids, etc., while their successors might think differently and let its contracts for bridges on the same river without competitive bids.

Our conclusion under plaintiffs in error's first proposition, that the action of the board of county commissioners in causing the bridge in question to be constructed was void, and likewise the warrant for $5,000 issued to pay for such bridge, sufficiently answers plaintiffs in error's second proposition, that an "irregularity in the execution of a contract does not render it void where the power to contract exists, but is irregularly exercised, and in such case, acceptance and using of the thing contracted for will ratify the contract." In the case at bar the contract under which the Canton Bridge Company constructed the bridge in question was not made by the board of county commissioners of Kay county, but was made and signed by members of the board, who did not even sign it as county com-

missioners, but signed their individual names thereto, and the acceptance of the bridge was in exactly the same manner. The contract, being void, could not be ratified and made valid in the manner stated, and thus effect indirectly what could not be done directly.

The contention of plaintiffs in error in their third proposition, to the effect that, where the action of the board of county commissioners is voidable only, the remedy is by appeal and not by injunction, is also answered in our conclusion that the action of the board in building the bridge in question was not voidable, but void. But if we concede that plaintiffs below had notice of the action of the county commissioners in contracting for this bridge, and had the right to appeal therefrom, still their right to an injunction herein is settled in the Harlow Case, *supra,* which was a proceeding by taxpayers to enjoin the board of county commissioners from carrying out a void contract for construction of a bridge, and wherein Justice Hayes, speaking for the court, says:

"If we assume in the present case that plaintiff has the right of appeal, still he may maintain this action. The board of county commissioners, for the reasons already stated, in contracting for the construction of the bridge, has acted without authority, and its act in attempting to carry out this contract, and to levy a tax for that purpose upon the taxpayers of the county, is illegal and void; and it may be restrained from carrying out this void contract by an injunction, without resort to the remedy of appeal."

This brings us to consideration of plaintiffs in error's fourth and last proposition, viz.: "Where goods are furnished to a county and the power to buy such goods exists, the acceptance and use of the goods will render the county liable for the reasonable value thereof."

In answer to this proposition it may be said that neither the county of Kay nor its board of county commissioners ever accepted the bridge in controversy. The only

pretense of acceptance of the bridge was a letter written by the county commissioners under date of February 17, 1911, as follows:

"Office of the County Clerk, Kay County. Newkirk, Okla. Feb. 17.

"Canton Bridge Co.,

"Kansas City, Mo.

"Gentlemen: We, the undersigned members of the board of county commissioners of Kay county, Oklahoma, have this day inspected the bridge built across the Chikaskia river, near the farm house of Bill Gunn, by the Canton Bridge Company, under contract with Kay county of November 18, 1910, and find that it is built and completed in accordance with the contract above mentioned and the accompanying plans and specifications, and hereby accept said bridge for and on behalf of Kay county, Oklahoma.

"L. J. BURKHALTER,
"H. C. SCOTT,
"L. A. CANN."

The uncontroverted evidence shows the bridge was not constructed until long after the allowance by the old board of county commissioners of the bridge company's claim and issuance of the warrant for $5,000, January 2, 1911, so it cannot be contended that these acts of the board constituted or were equivalent to acceptance of the bridge.

It follows from what has been said that the court below did not err in overruling defendants' demurrers to plaintiffs' petition and evidence, and in overruling the motion for a new trial. It is unnecessary to consider the other propositions urged by counsel.

Careful consideration has been given the able and exhaustive briefs and arguments of counsel on both sides, and we have found them very helpful in our consideration of the legal propositions involved in the case.

We conclude that the judgment of the district court should be affirmed, and it is so ordered.

All the Justices concur, except KANE, C. J., and SHARP, J., not participating.