**BOARD OF COUNTY COM'RS et al. v. EASTERN OKLAHOMA PUB. CO.**

No. 16828—Opinion Filed May 4, 1926.

Rehearing Denied Nov. 23, 1926.

**1. Counties—Contract for Publishing Pro-ceedings of Board of Commissioners— Invalidity Where Newspaper was not a Legal Publication.**

The board of county commissioners are not a judicial tribunal, with powers to in-terpret statutes of the state, whose decis-ions have a conclusive effect, and if the board of county commissioners of Muskogee county decided that the Muskogee Daily News was a legal publication, when in fact it was not such a paper as would constitute a legal publication, as provided by section 3569, C. S. 1921, their decision was void, and any contract that they may have enter-ed into with the owners and publishers of the Muskogee Daily News to publish the proceedings of the county commissioners was likewise void, and a claim filed by the Muskogee Daily News, for services render-ed under such contract, for publishing the proceedings of said board of county com-missioners was not a valid claim against the county.

**2. Newspapers—Legal Successor of Legal Publication.**

A transfer or conveyance by a bill of sale executed by the owner and editor of the Porum Journal, which at the time was a legal publication, wherein was included the files of said Porum Journal, consisting of copies of the weekly issues of said paper for more than twelve months, together with the subscription list of said Porum Journal, and the name of said paper, is not such a conveyance as will convey title to a news-paper when, as in this case, the Porum Jour-nal continued to operate under the name of the Porum Leader, and continued to mail the Porum Leader, successor of the Porum Jour-nal, to all of the subscribers of the Porum Journal, and carried out and completed all advertising contracts with its customers. Held, that the Porum Leader was the legal successor of the Porum Journal, and that the Muskogee Daily News, edited and pub-lished by the Eastern Oklahoma Publishing Company, who purchased the name, subscrip-tion list, and files of the Porum Journal, and edited said Muskogee Daily News in Muskogee, Okla., same being a daily news-paper, was not the legal successor of the Porum Journal, and did not constitute such a newspaper as is entitled to publish legal notices as provided by section 3569, C. S. 1921.

(Syllabus by Jones, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Muskogee County: E. A. Summers, Judge.

Action by the Eastern Oklahoma Publish-ing Company against the Board of County Commissioners of Muskogee County. R. B. Beard and S. P. Mann intervened. Judg-ment for plaintiff, and defendants and inter-veners appeal. Reversed and remanded.

S. H. Lattimore, Chas. A. Moon, and Francis Stewart, for plaintiffs in error.

Neff & Neff and Harry G. Davis, for de-fendant in error.

Opinion by JONES, C. This suit was in-stituted in the district court of Muskogee county by the defendant in error, as plain-tiff, against the plaintiffs in error, as de-fendants, to recover certain sums of money as evidenced by claims attached to and made a part of plaintiff's petition.

The appellee, plaintiff in the trial court, is a corporation engaged in the newspaper or publishing business, and, as such, entered into a contract, whereby it agreed to publish the proceedings of defendants, the board of county commissioners of Muskogee county, and alleges that on the 27th day of June, 1924, said board of county commissioners, by resolution, designated the Muskogee Daily News (which is a paper published by plaintiff, Eastern Oklahoma Publishing Company), as the paper in which to publish all proceedings of said board and legal notices for the year commencing July 7, 1924; and pursuant to said resolution, a contract was entered into by the parties to this controversy, awarding to the Eastern Oklahoma Publishing Company, as publishers of the Muskogee Daily News, the right to publish all reports, or proceedings, of the board of county commissioners, and all legal notices and legal publications made during the year by any county official, and agreed to pay for said services the rates provided by law. Pursuant to the resolution and contract entered into, the plaintiff alleged that it performed certain services, by publishing the proceedings and such other matters as were presented to it by the county clerk, acting as the clerk of the board of county commissioners, and filed its claim as required by law, and that said claims were disallowed and payment refused. Said claims are attached to and made a part of plaintiff's petition.

Defendants file their answer and deny all of the allegations contained in plaintiff's petition, except such as are admitted; admit the passage of the resolution as alleged in plaintiff's petition, but aver that same was duly rescinded and set aside on the same day that it was passed; they also admit the filing and disallowance of the claims in controversy, but aver that the resolution and contract was rescinded and repudiated with the Eastern Oklahoma Publishing Co., the plaintiff, because the Muskogee Daily News, a paper belonging to and published by said company, and in which said publications were made, for which the claims were filed, was not a legal newspaper; that it had not been continuously and uninterruptedly published for 52 weeks prior to the making of said contract, or the publication of any notice or proceeding pursuant thereto; that, as a matter of fact, the first issue of said paper was published less than one week before the making of said contract; that said publications were void, and of no force or effect. To this answer the plaintiff filed a reply in the nature of a general denial.

The interveners, who appear here as plaintiffs in error, R. B. Beard and S. P. Mann, filed their plea of intervention, as taxpayers of Muskogee county, and attack the resolution and contract relied upon by the plaintiff, and allege that on the 27th day of June, 1924, the board of county commissioners, pursuant to a resolution, ordered that notice for bids for the county printing be advertised, and that pursuant thereto advertisements for said bids were duly published, setting forth that said bids would be received on or before the 14th day of July, 1924; that same would be awarded to the lowest and best bidder, and that said board of county commissioners were without authority to enter into a contract for printing until after the said 14th day of July, 1924. Interveners further allege that there was an appeal duly taken by the county attorney from the action of the county commissioners in entering into the contract here sued upon by the Eastern Oklahoma Publishing Company; that said appeal was duly filed in the office of the court clerk of Muskogee county, and that same superseded and suspended any action taken by the board of county commissioners, and that said appeal constitutes a bar to the action in the present case. Interveners also set up the defense that the Muskogee Daily News had not been published for such length of time as is provided by law to make it a legal publication. They also allege that there is another cause of action pending, involving a portion of the claim set forth in plaintiff's petition. Upon the trial of the case, plaintiff's cause seems to have been dismissed as to the items involved in the case formerly brought, and a stipulation was entered into by the county attorney and counsel for plaintiff, to the effect that all defenses available in the cause, wherein an appeal was taken from the action of the board of county commissioners, should be available to the defendants in this action, thus disposing of those questions.

Upon the trial of the cause to the court, without the intervention of a jury, judgment was rendered for the plaintiff and against the defendants for the sum of $1,325.25. Appellant board of county commissioners of Muskogee county prosecute this appeal, and set forth various assignments of error, and likewise the interveners Mann and Beard appeal, and file a separate petition in error, wherein they adopt and reassign all of the assignments of error set forth by the appellant board of county commissioners, and urge that various other actions of the court

were error. The appellants join in the brief filed, and the first proposition urged is that:

"The court was in error in refusing to pass upon the question of the legal status of the Muskogee Daily News, and in holding that such questions had been judicially determined by the board of county commissioners of Muskogee county, and that such determination was res adjudicata in this action."

We cannot concur in this holding of the trial court. In the first place, the resolution does not disclose that any hearing was had by the board of county commissioners to determine the legal status of the Muskogee Daily News.

Appellants cite the case of Harlow v. Board or County Commissioners, 33 Okla. 353, 125 Pac. 449, which involves an action of the county commissioners, wherein they entered into a contract for the construction of a bridge in contravention of the statutes prohibiting the building of bridges nearer than six miles apart on certain character or kind of streams, and this action was attacked in the district court, wherein injunctive relief was sought, and in passing upon the rights of the parties to maintain the action. and in discussing the contention there made. that the only remedy was by appeal from the order of the county commissioners authorizing and directing the construction of a bridge, this court held:

"And plaintiff, being a resident taxpayer, may invoke the aid of a court of equity to prevent the illegal creation of the debt for the construction of the bridge, and of the illegal disposition of the money in the payment of such debt." (Citing numerous authorities.)

And in the case of Board of County Commissioners of Kay County v. Smith, 47 Okla. 184, 148 Pac. 111, which is likewise a case involving the construction of a bridge. wherein an attack is made by certain taxpayers of Kay county upon the action of the board of county commissioners to enjoin the payment of warrants issued to the bridge company for the construction of the bridge, the plaintiff, bridge company, in that case took the position that:

"The county commissioners. being vested by law with power to build bridges over streams of the county, are vested with power to determine what streams therein are, or are not, principal streams. and in the absence of fraud, their decision is conclusive."

But this court refused to agree with such contention, and held in the second paragraph of the syllabus of the opinion that:

"Where the county commissioners in November, 1910, caused a bridge to be constructed over a principal stream under a contract made and signed by them as individuals, and without any attempt to comply with section 7861, O. L. 1909, such action of the commissioners is void, and taxpayers of the county may enjoin payment of a warrant issued by the board of county commissioners to pay for such bridge."

And in the body of the opinion said:

"The board of county commissioners is not a judicial tribunal, with powers to interpret statutes of the state, whose decisions have a conclusive effect, and if the board of county commissioners of Kay county decided the Chickaskia river was not a principal stream, when in fact it was such, their decision was void."

Hence, we conclude, that should the county commissioners have had a formal hearing, and determined that the Muskogee Daily News was such a paper as would constitute a legal publication as required by our statutes, to wit, section 3569. C. S. 1921, which, among other requirements made, provides that all legal publications of every kind shall have no force or effect unless published in a newspaper of the county having general circulation, and which has been continuously and uninterruptedly published in said county during a period of "fifty-two consecutive weeks prior to the first publication of the notice or advertisement." It would not have been such an adjudication as would have been res judicata, because such holding and order based thereon would be in direct contravention of the statute, and void, and subject to attack in any proceeding, either direct, collateral or equitable.

In Allen et al. v. Board of County Commissioners of Pittsburg County, 28 Okla. 773, 116 Pac. 175, this court held:

"It is a settled rule that the grant of powers to boards of county commissioners must be strictly construed, because when acting under special authority they must act strictly on the conditions under which the authority is given: that they can exercise only such powers as are specially granted, or as are incidentally necessary for the purpose of carrying into effect such powers: and where the law prescribed a mode which they must pursue .in the exercise of such powers, it, as a rule, excludes all other modes of procedure."

We are therefore of the opinion that the trial court was in error in holding that the action of the county commissioners, in entering into a contract with the Muskogee Daily News, was such an action or adjudication as would be res judicata in this act-

ion. We also call attention to the fact that, according to the rule announced in the case of Harlow, supra, this court seems to recognize the rule that parties in actions of this character have two remedies, either of which they may pursue. In the Harlow Case we find this language:

"If we assume in the present case that plaintiff has the right of appeal, still he may maintain this action. The board of county commissioners, for the reasons already stated, in contracting for the construction of the bridge, has acted without authority, and its act in attempting to carry out this contract, and to levy a tax for that purpose upon the taxpayers of the county, is illegal and void; and it may be restrained from carrying out this void contract by an injunction, without resort to the remedy of appeal."

Hence, we conclude that, regardless of the action of the county commissioners. same being void, any party aggrieved may appeal from their action. or may institute proceedings in the district court to set aside or enjoin the final results of the action of the board of county commissioners. And the interveners and board of county commissioners in this case have a right to set up any defense in this suit that they could have availed themselves of, on a direct appeal from an order of the board of county commissioners in granting the contract relied upon by the plaintiff in this case.

The second proposition urged by appellants is that:

"The Muskogee Daily News was not a legal publication during the times that it is alleged to have published the proceedings for which the plaintiff in this action asks compensation."

As heretofore stated, section 3569, C. S. 1921, requires that all legal proceedings must be published in a newspaper of general circulation, and which has been continuously published for a period of 52 weeks, and appellant contends that the Muskogee Daily News was not such a publication. The facts in this particular, as disclosed by the record, show that J. O. Fox was the owner and publisher of the Porum Journal at Porum, Muskogee county; that agents of the Muskogee Daily News entered into negotiations with said Fox, whereby they purchased for the Eastern Oklahoma Publishing Company, publishers of the Muskogee Daily News, the files of the Porum Journal for more than a year past, and the subscription list. and the name of the paper; that none of the physical properties of the Porum Journal were transferred or conveyed, no

advertising contracts were sold, and that the Porum Journal was succeeded by the Porum Leader, which was edited by said Fox, and was mailed to all of the former subscribers of the Porum Journal, and was published at the same place, and was a paper of the same kind and character, and fulfilled all of the advertising contracts which had formerly been entered into by the editor, Fox, as editor and owner of the Porum Journal. The only change or difference in the Porum Leader and the Porum Journal was a change of name. It was a weekly paper and was continued without interruption. The appellee here, Eastern Oklahoma Publishing Company, only purchased the files. which consisted of a copy of each issue of the Porum Journal, for a period of about 18 months, and the subscription list, consisting of about 300 subscriptions, and the right to use the name "Porum Journal," of which the Muskogee Daily News is published as it successor. and its first publication was issued on July 16, 1924, at Muskogee, Okla., as the Muskogee Daily News.

We do not believe that such a procedure is sufficient to constitute the Muskogee Daily News a legal publication, as contemplated by section 3569, C. S. 1921. It is obvious that the Porum Leader was the successor of the Porum Journal. The only change, so far as that paper is concerned, was that of the name. In case of Norton v. City of Duluth (Minn.) 56 N. W. 80, involving a similar question, the Supreme Court of Minnesota, held:

"There was no change in the general appearance of the paper, and we are clearly of the opinion that its legal indentity was preserved. It was the same newspaper, under a different name, but this change of name had no more effect upon its identity, as the same publication than would have had a change of proprietors."

Then the question arises, Can there be two legal successors, measured by the standard or provisions set forth in the statute, of the same paper? In the case of Seabrook v. Grimes (Md.) 68 Atl. 883, the Supreme Court of Maryland, in passing upon a similar question, held:

"The name of a newspaper is in the nature of a trade-mark, and passes by an assignment in connection with the business in which it is used; but. apart from the article or business to which it is affixed, it confers no right of ownership, and, unless the specific plant, or property by means of which this paper was published, is held to pass under this will to these plaintiffs, they can have no property right in its name as an element of value in this case. Witthaus

v. Braun, 44 Md. 308, 22 Am. Rep. 44; Wilmer, Trustee, v. Thomas, 74 Md. 489, 22 Alt. 403, 13 L. R. A. 380. 'As a mere abstract right, having no reference to any particular property, it is conceded it cannot exist.' Dixon Crucible Co. v. Guggenheim, 2 Brewst. (Pa.) 339."

And in McFarland v. Stewart (Pa.) 2 Watts. 111, the Supreme Court of Pennsylvania held:

"The subscription list of a newspaper is not the subject of a separate property, but an incident of the establishment which passes with the sale of the material."

And in the case of Dawley v. Callahan (Wis.) 189 N. W. 149, which involves a very similar question to the one involved in the instant case, the Supreme Court of Wisconsin said:

"Under St. 1921, par. 74.33 (1), requiring a delinquent tax list of a county to be published in a newspaper in the English language, which has been in circulation in the county for at least two years prior to the publication, where a corporation, organized to publish a newspaper, bought the name of a paper which had been formerly published in German and a list of subscribers to whom the new paper which the corporation proposed to publish might be sent, but who were not actually subscribers, and the seller of the name of the German paper assumed another name for his paper, but transferred none of the physical assets of his newspaper plant, the new newspaper published by the corporation was not qualified as a paper in which to publish a delinquent tax list."

And in the body of the opinion we find the following language:

"Considering the purpose of the statute, which was that the tax list should be published in a paper of general circulation, which had been in existence long enough to be of a permanent and substantial character, we are of the opinion that the Antigo Herald was not a newspaper which had been published for two years preceding the proposed date of the publication of the tax list. If we look beyond the form to the substance of things, Mr. Goebel, the publisher of the Antigo Herald, did not transfer a newspaper in the ordinary acceptation of that term to the Langlade Printing Company. He transferred nothing excepting a name plate, which was never used, the name being changed from the Antigo Herold to the Antigo Herald. While he furnished a list of subscribers, to whom the new paper might be sent, they were not in fact subscribers to the new paper in any right sense of the term. The Langlade Printing Company purchased nothing but the right to use the name, assuming that to have been

necessary, and the right to continue the serial number. Without specifying exactly what does constitute a sale of a newspaper, we are clear that this transaction does not constitute such a transaction so as to make the new publication a continuation of the old."

We think that the authorities heretofore cited conclusively show that the judgment of the trial court was erroneous, wherein he refused to adjudicate the matter of the legality of the Muskogee Daily News as being a legal publication, and that it is evident that said paper was not a legal publication, as disclosed by the record, in the light of the authorities heretofore cited. It naturally follows that the action of the county commissioners, wherein they entered into a contract with the Muskogee Daily News, was in contravention of the statute, and void, and this contract, being the basis of foundation of the claims filed, and which is made the basis of this action, would likewise be void. There are numerous other questions raised in this case, but we deem it unnecessary to make mention of same. The proposition which we have heretofore discussed, being conclusive of the rights of the parties to this controversy, we therefore find that the judgment of the trial court should be and the same is hereby reversed, and the cause remanded to the trial court, with direction to dismiss plaintiff's action.

By the Court: It is so ordered.

Note. See under (1) 15 C. J. 458 §104; p. 540 §233; 29 Cyc. p. 702. (2) 29 Cyc. p. 697.