## HARRELL et al. v. FARM & HOME SAVINGS & LOAN ASS'N.

No. 18798.    Opinion Filed May 8, 1928.

(Syllabus.)

**Newspapers—Publication of Legal Notices— Weekly Paper Devoted Primarily to Oil Industry Held "Newspaper of General Circulation."**

Record in this case examined, and held: The evidence supports the judgment of the trial court in finding that the Krohn Oil Review was a newspaper within the contemplation of section 3569, C. O. S. 1921.

Error from District Court, Carter County; John B. Ogden, Judge.

Action by the Farm & Home Savings & Loan Association of Missouri against Sophie G. Harrell and another to foreclose mortgage. Judgment for plaintiff, motion by defendants to set aside foreclosure sales overruled, and they bring error. Affirmed.

Sigler & Jackson, for plaintiffs in error.

Champion, Champion & Fischl, Thomas Norman, and R. L. Disney, for defendant in error.

LESTER, J. The parties on appeal appear in the reverse order to that in district court. The plaintiffs in error will be referred to as defendants, and the defendant in error as plaintiff.

The plaintiff procured a judgment against the defendants in the district court of Carter county on a certain money judgment and also foreclosing a mortgage lien upon real estate given to secure certain indebtedness. It thereafter procured an order of sale from said court and caused notice of the same to be given in five issues of a certain publication known as the Krohn Oil Review. The

sale was made at the time and place as contained in said notice and the plaintiff filed its return of said sale, together with the notice of publication, and also its motion praying confirmation of said sale. The defendants filed a motion in which they resisted confirmation of the sale and asked the court to set aside the same for the reason that no notice of publication had been made prior to the time said property was offered for sale. It appears that said publication began on the 8th day of May, 1925, and was published daily, except Sunday. It is shown by the evidence that the first notice of the sale of the real estate involved in this action appeared in the issue of the Krohn Oil Review of May 12, 1927, and the same continued to appear weekly thereafter for a period of four consecutive weeks.

The sole question here presented on review is whether the Krohn Oil Review is a newspaper within the purview of section 3569, C. O. S. 1921, said section being in part as follows:

"No legal notice, advertisement, or publication of any kind required or provided by any of the laws of the state of Oklahoma to be published in a newspaper, shall have any force or effect as such, unless the same be published in a newspaper of the county having general circulation therein, and which newspaper has been continuously and uninterruptedly published in said county during the period of 52 consecutive weeks prior to the first publication of the notice or advertisement."

The Krohn Oil Review devoted almost its entire space to the oil industry of southern Oklahoma and northern Texas. It carried daily reports showing oil developments in these fields of operation, also reports of real estate transfers in southern Oklahoma. It contained, from time to time, abstracts of the proceedings in the district court of Carter county; it reported the prices of oil in the local fields, as well as stock market reports relating to the value of bonds and stocks of the several leading oil companies. It also contained, from time to time, a column of news items of general interest. It further appears that after said publication had been issued regularly and consecutively for more than 52 weeks, there appeared a generous number of legal publications and notices, furnished by numerous members of the bar. The evidence shows that there were 1,100 paid-up subscribers to the Krohn Oil Review; that 600 of these were residents of Carter county, Okla., and resided in different cities and towns in said county. It is also shown that the sub-

scribers were persons of various occupations and professions.

Both parties to the action have filed briefs and cited authorities to sustain their respective positions. An examination of authorities cited shows that most of the cases therein are based upon the particular language used in the various statutes relating to service by publication.

In the case of Hesler v. Coldron, 29 Okla. 216, 116 Pac. 787, this court had under consideration the question as to whether a certain publication issued in Oklahoma City, Okla., under the name of the Daily Legal News, was a newspaper and of general circulation within the contemplation of section 4006, Wilson's Rev. & Ann. St. Okla. 1903, said section being identical with section 3569, C. O. S. 1921. In that case the court gave a resume of the testimony showing the character of the publication there in question; said opinion recited, in part, the following:

"The testimony is undisputed, and proves that said Daily Legal News had been published since 1903, and more than 52 consecutive weeks prior to said first publication; that at the time the publication in question was running, and for one year prior thereto, it had a circulation of from 205 to 215, among bankers, merchants, lawyers, real estate agents, insurance agents, wholesale merchants, hardware merchants, physicians, and almost every class of business in the county; that it circulated in almost every town in the county, including Jones, Oklahoma City, Edmond, Luther, Harrah, and Spencer; that it was so circulating for one year prior to the 1st of October, 1908; that in addition to items of legal news it carried a list of the real estate transfers of each day, the mortgages, both real and chattel, appointments of agents, powers of attorneys filed in the register's office, marriage licenses, building permits, charters from the Secretary's office at Guthrie, also news items of general interest. It carried, besides court proceedings, short telegraphic dispatches of general interest. Of the four copies of the paper introduced in evidence, one contained a telegraphic dispatch concerning the Cooper trial at Nashville; one concerning President Castro of Venezuela; and another concerning the illness of Governor Lillie. We think the court erred, and that the evidence discloses that the publication in question was one of general circulation in the county and fell squarely within the terms of the statute."

This court also announced the following syllabus in said case:

"From the evidence in this case, the court holds that the Daily Legal News was a

'newspaper of the county having general circulation therein,' within the contemplation of Wilson's Rev. & Ann. St. Okla. 1903, sec. 4006, and that the certificate required to be published by Wilson's Rev. & Ann. St. Okla. 1903, sec. 3901, was properly published therein."

The above decided case has been the law of this state since July 11, 1911, and the attorneys of this state, relying upon the force and effect of said opinion, have caused legal service and notices to appear in journals and publications issued in a similar manner as that under consideration in the above cited case. We think it would be little less than calamitous to reverse the holding of this court upon the point there involved, and when there is no apparent reason or justification for such action.

Judgment is affirmed.

BRANSON, C. J., MASON, V. C. J., and HUNT, CLARK, RILEY, and HEFNER, JJ. concur.