## COX et al. v. FIRST MORTGAGE LOAN CO.

No. 24644.    Sept. 10, 1935.

W. A. Smith and Harold D. Smith, for plaintiffs in error.

I. L. Harris and Ted R. Elliott, for defendant in error.

CORN, J.    This was a foreclosure action wherein judgment of foreclosure was entered in favor of the plaintiff on default of the defendants. In due time a special execution and order of sale was published in the Daily Law Journal, the first insertion

being on the 19th day of August, 1932. After the sale, the defendants filed their objections to the confirmation of sale based upon the grounds that said publication was not a legal publication as contemplated by the statute, and further, that the appraisement of the property had not been made in conformity to law. A hearing was had on said objections, and at the conclusion thereof the sale was confirmed. From this judgment the defendants have perfected their appeal.

The trial court, at the time the sale was confirmed, made a finding of facts which is as follows:

"The Daily Law Journal is the legal successor of the Oklahoma Citizen and that the Oklahoma Citizen is the legal successor of the Capital American, and that the Capital American had been a legal publication since about the year 1907. And that on or about the 17th day of April, 1932, the Leader Press, a corporation, purchased of and from Amos L. Wilson, sole owner of the Oklahoma Citizen, all of his right, title and interest in and to said newspaper; that said newspaper and said Capital American, its predecessor, had always been printed by the Western Newspaper Union, and that said Wilson did not have equipment to print a newspaper. That after the purchase of said newspaper by said Leader Press, said Leader Press transferred its interests in said paper to the Law Journal Publishing Company, which concern changed the name of said Oklahoma Citizen to the Daily Law Journal and have since published the same as a daily newspaper under the volume and issue numbers of said Oklahoma Citizen, and have printed the same upon their own presses in Oklahoma City; that said daily newspaper completed all the advertising contracts of the Oklahoma Citizen and that said newspaper, the Daily Law Journal, is in all respects a legal publication within the contemplation of section 54, O. S. 1931, and is qualified now and was qualified at the time the first insertion of the advertisement in this cause was printed, to publish legal notices."

The parties will hereafter be designated as they appeared in the trial court.

The only assignment of error by the defendant that carries with it any merit is:

"The court erred in holding that the Daily Law Journal was a legal publication and qualified to publish notices of sale of the real property involved in this foreclosure case."

The facts in this case briefly stated are as follows: One Wilson, a resident of Capitol Hill, had published a weekly newspaper designated as the Capitol American since about the year 1924. On January 1, 1932, he changed the name of this publication to

the Oklahoma Citizen, as successor to the Capitol American. In March, 1932, he began publishing another paper, the Capitol Hill News. He did this by dividing the subscription list of the Oklahoma Citizen and thereafter sent to one subscription list the Oklahoma Citizen and to the other subscription list the Capitol Hill News, but the two newspapers were almost identical in material and print, except the names. Each paper, however, had a different permit under the postal laws. He never at any time printed either of the papers, but had them printed by the Western Newspaper Union.

On April 11, 1932, he sold one of said newspapers, the Oklahoma Citizen, as evidenced by the following bill of sale:

"For and in consideration of the sum of five hundred dollars ($500) payable as follows: three hundred dollars in cash, the receipt of which is hereby acknowledged, and the execution and delivery to me of two promissory notes of even date herewith, each for one hundred dollars and due and payable thirty and sixty days hereafter, I hereby sell, transfer and deliver to the Leader Press, a corporation authorized to do business in the state of Oklahoma, all of my right, title, ownership and interest into a certain weekly newspaper, to wit: 'The Oklahoma Citizen,' which at this date has been continuously and legally published for a period of nine (9) years and is duly and legally entered as second class mail matter at the post office at Oklahoma City, state of Oklahoma, together with its subscription list, and I hereby covenant and agree that I am the sole owner of said above-described newspaper and that I will warrant and defend the title to same against all persons whatsoever, and agree that the said Leader Press may issue and print an issue of said. 'The Oklahoma Citizen' on and after April 16th as the sole owner thereof and I hereby deliver said newspaper to the said Leader Press.

"In witness whereof I have hereunto set my hand this 11th day of April, 1932.

"In the presence of

"O. W. McKowen, Witness

"Frank Eagin, Witness      Amos L. Wilson."

Immediately thereafter the Daily Law Journal became the owner thereof by proper transfers.

This case was tried by the defendant in the trial court on the theory that the Capitol Hill News was the successor to the Capital American, and that there could not be two successors to the same paper. The question as to whether the Capitol Hill News is a legal newspaper is not properly presented to us in this case for determination.

We will, therefore, not express any opinion. The question for us to determine is whether the Daily Law Journal was a legal publication at the time the first notice of sale of said property was given.

The Daily Law Journal was circulated among some 250 subscribers, together with other copies which were circulated gratis among county officers and others. It was delivered by mail or carriers to Bethany, Arcadia, Choctaw, Harrah, Spencer, Wheatland, Britton, Edmond, and Oklahoma City.

It is contended by defendant that the Daily Law Journal is not a newspaper of general circulation as provided by section 450, O. S. 1931.

In Hessler v. Coldron, 29 Okla. 216, 116 P. 787, the trial court sustained the demurrer to the evidence, and held that the Daily Law News was not a newspaper of general circulation. In deciding the matter in which the trial court was reversed this court said:

"It had a circulation of from 205 to 215, among bankers, merchants, lawyers, real estate agents, insurance agents, wholesale merchants, hardware merchants, physicians, and almost every class of business in the county. That it circulated in almost every town in the county, including Jones, Oklahoma City, Edmond, Luther, Harrah, and Spencer."

That case was also followed by this court in the later case of Harrell v. Farm Home Savings & Loan Association, 130 Okla. 279, 267 P. 265.

Defendant also complains of the transfer of the Oklahoma Citizen to the Daily Law Journal, and cites several cases, but relies mostly on the case of Board of County Commissioners v. Eastern Oklahoma Publishing Company, 120 Okla. 122, 250 P. 496, where this court held:

"A transfer or conveyance by a bill of sale executed by the owner and editor of the Porum Journal, which at the time was a legal publication, wherein was included the files of said Porum Journal, consisting of copies of the weekly issues of said paper for more than twelve months, together with the subscription list of said Porum Journal, and the name of said paper, is not such a conveyance as will convey title to a newspaper when, as in this case, the Porum Journal continued to operate under the name of the Porum Leader, and continued to mail the Porum Leader, successor of the Porum Journal, to all of the subscribers of the Porum Journal, and carried out and completed all advertising contracts with its customers."

In that case the facts show that J. O. Fox

had a legal established place of business at Porum, where he edited and printed and published the Porum Journal. He had type, presses, machinery, and equipment, and with said machinery and equipment Fox printed or caused to be printed the Porum Journal. After he had sold the Porum Journal he continued to print and publish a newspaper at the same place and of the same character, designating it as the Porum Leader. successor to the Porum Journal, and used the same type, presses, and equipment that he had been using to print the Porum Journal. It does not appear that there was an interruption of a single issue to the subscribers. Only the name was changed, and it fulfilled all the advertising contracts of the Porum Journal.

There is a distinction between printing a newspaper and publishing a newspaper. Section 54, O. S. 1931, provides that the legal notice shall be published in a newspaper published in the county. Section 455, O. S. 1931, which refers to counties of more than 110,000 population, provides that the land shall not be sold, unless 30 days' notice be given in a newspaper printed in the county.

The setting of type, the preparing of the forms for the press work, and the running of the paper through the machinery constitute the substantial and important part of the printing. In the case of U. S. v. Williams, 3 Fed. 484, publishing is defined as follows:

" 'To publish' is defined to issue, to make known what before was private, to put into circulation. * * * The idea of publicity, of circulation; of intended distribution, seems to be inseparable from the term 'publication.' "

All the legal notices went with the paper and were completed by the Daily Law Journal. Wilson, the publisher, did not send his other newspaper to the list of subscribers to the Oklahoma Citizen, nor did he attempt to designate it as successor to the Capital American until September 27th, more than five months after the sale. Therefore, it is apparent it was the intention of Wilson that he was selling the Oklahoma Citizen without reservations.

Where a person is sole owner and publisher of two newspapers and does not own, equipment to print either of them, but has them printed elsewhere and executes a bill of sale which provides: "* * * I hereby sell, transfer, and deliver * * * all my right, title, ownership, and interest into a certain weekly newspaper, to wit, the Oklahoma Citizen, which at this date has been continuously and legally published for a period of nine years * * * together with its subscription list * * * I will warrant and defend title to it," carries with it everything essential that made it a legal newspaper during that period of time.

Any contention of the defendant inconsistent with a part of the bill of sale which provides "* * * the Oklahoma Citizen which at this date has been continuously and legally published for a period of nine years * * *" is without merit.

We are wholly unable to determine just how the publication of a newspaper beginning January 1, 1932, can be published as set forth in the bill of sale for a period of nine years by April 16, 1932, unless it was made successor to some other paper. With equal difficulty we are unable to determine how, under the facts and circumstances in this case, Wilson had sufficient interest left in the Capital American after he had used it to make the Oklahoma Citizen a legal publication, and after he had sold and transferred the same, to breathe legal existence into the Capitol Hill News or any other paper.

It is manifest that Wilson had never printed either of his papers; therefore, had little equipment, if any, to convey to the purchaser of the paper.

Under our statutes a person is not required to print a paper in order to publish same, but can have the printing done elsewhere. To hold otherwise would mean that if anything went wrong with the equipment necessary to print the issues to the extent it would take a few weeks to have the same repaired, the owner would be required to secure other equipment either by purchase or some other means to print the paper, in order to retain it as a legal publication.

The judgment of the trial court is affirmed.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS and PHELPS, JJ., concur.