UNITED STATES *v.* WILLIAMS.

*(Commissioner's Court, E. D. New York. ———, 1880.)*

1. MAILING OBSCENE LETTER—REV. ST. § 3893—ACT JULY 12, 1876, (19 ST. 90.)—Section 3893 of the Revised Statutes, as amended by section 1 of the act of July 12, 1876, (19 St. 90,) provides as follows: "Every obscene, lewd, or lascivious book, pamphlet, picture, paper, writing, print, or other publication of an indecent character, * * * and every letter upon the envelope of which, or postal card upon which, indecent, lewd, obscene, * * * terms or language may be written or printed, are hereby declared to be non-mailable matter. * * * And any person who shall, knowingly, deposit, or cause to be deposited, for mailing or delivery, anything declared by this section to be non-mailable matter, * * * shall be deemed guilty," etc. *Held,* that written communications of a private, personal nature, emanating from a single person, and exhibiting no purpose of going beyond the one directly addressed, are not within the purview of the statute. *Held,* further, that the prohibition of the statute was confined to that class of letters wherein the indecent matter is exposed to the inspection of others than the person directly addressed.

2. EVIDENCE—DEPOSIT IN MAIL—POSTMARK.—A postmark upon the envelope of a letter affords presumptive proof that such letter has been deposited in the mail.*

The defendant was arrested upon the complaint of Anthony Comstock, agent of the Society for the Suppression of Vice, upon the charge of sending an obscene letter through the mail. An examination took place before United States Commissioner J. J. Allen, for the purpose of determining whether there was sufficient cause to send the case to the grand jury.

ALLEN, Commissioner. The defendant is charged with having violated the provisions of section 3893, U. S. Rev. St., as amended by section 1, act of July 12, 1876, (19 U. S. St. 90.) The portion of the statute to which the charge relates is as follows:

"Every obscene, lewd, or lascivious book, pamphlet, picture, paper, writing, print, or other publication of an indecent character, * * * and every letter upon the envelope of which, or postal card upon which, indecent, lewd, obscene * * * terms or language may be written or printed, are

*See *United States* v. *Noelke,* 1 FED. REP. 426.

hereby declared to be non-mailable matter. ❊ ❊ ❊ And any person who shall, knowingly, deposit, or cause to be deposited, for mailing or delivery, anything declared by this section to be non-mailable matter, ❊ ❊ ❊ shall be deemed guilty," etc.

The particular act complained of is the depositing in the mail of the Greenpoint station, Brooklyn, on or about September 23, 1879, an obscene and indecent letter, enclosed in an envelope, addressed to Mr. George Rowland, of Greenpoint.

Several questions are involved in this case : Is the letter referred to obscene or indecent ? Is it such an one as is embraced by the statute ? Was it deposited in the mail ? And is the evidence such as to justify the belief that the defendant violated the statute as alleged ? The letter is evidently obscene and indecent. Obscene matter is that which tends to deprave and corrupt the morals of those whose minds are open to such influences. This is the test given by Chief Justice Cockburne in *Regina* v. *Hicklin*, (L. R. 3 Q. B. 360,) and adopted in later cases (*U. S.* v. *Bennett*, S. D. N. Y. 1879.) In the case of *Heywood*, (Mass.,) an obscene writing was defined as one offensive to decency, indelicate, impure, and an indecent one, as one unbecoming, immodest, unfit to be seen. Applying these tests, it is manifest that the letter in question is both obscene and indecent.

The proof of deposit in the mail consists of the postmark upon the envelope, and the testimony of the post-office officials. Both the English and American courts have held that postmarks afford presumptive proof of deposit in the mail, and, although some effort has been made to show that these postmarks might have been affixed otherwise than by the postal officials, there is sufficient evidence that the letter was deposited in the mail as charged.

The question next to be considered is whether the letter referred to is shown by the evidence to be within the scope of the law. The offence charged is statutory, and the determination of this question depends upon the construction to be given to the statute upon which the charge is based. I

find no reported case in which this precise question has been discussed and decided, and it will be necessary, therefore, to refer to the series of legislation upon the subject. The act of March 3, 1865, section 16, provided that "no obscene book, pamphlet, picture, print, or other publication of a vulgar and indecent character" should be admitted into the mails, and punished their deposit therein. The act of June 8, 1872, section 148, added to the prohibited matter "any letter upon the envelope of which, or postal card upon which, scurrilous epithets may have been written or printed," and prescribed a penalty for deposit of any "such obscene publications." Then followed the acts of March 3, 1873, and July 12, 1876, which will be referred to hereafter.

It is evident that no statute, prior to 1873, declared an obscene private letter contraband. Such a letter is not a "book," "pamphlet," "picture," or "print," and is not covered by the words "other publication," because they refer only to the classes specifically named.

In the case of *Woodhull,* (S. District N. Y., June, 1873,) Judge Blatchford held that as the word "newspaper" was not mentioned in the act of 1872, it was not included within the meaning of the words "other publications;" that the statute being penal, must be strictly construed, and it meant that, with other publications of the same character, books, pamphlets, and prints were included. In the act of 1876 the language is "obscene book, paper, writing, print, or other publication," which means, according to the rule of construction laid down in the *Woodhull Case,* that among the publications prohibited were obscene books, writings, and prints. It would seem, therefore, that congress intended the statute to embrace only such writings as are "publications" within the meaning of the law.

A "publication" is defined in the dictionaries as a book or writing published, especially one offered for sale or to public notice; and to publish is defined to issue, to make known what before was private, to put into circulation. Writings are either printed matter or manuscript. The idea of publicity, of circulation, of intended distribution, seems to be in-

separable from the term "publication." That only such papers and writings as partake of this character were intended to be declared contraband, seems to be indicated by a further review of the series of legislation upon the subject. The words "paper" and "writing" first appear in the act of 1873, the title of which is "An act for the suppression of trade in and circulation of obscene literature and articles of immoral use." The statute is thus declared to be directed only to such literature and articles as are intended for sale and circulation. Section 1 of this act imposes a penalty upon any one who, in any place within the exclusive jurisdiction of the United States, "shall sell, give away, exhibit, or otherwise publish, or have in possession for such purpose, any obscene book, pamphlet, paper, writing, or shall advertise the same for sale."

This section does not punish the preparation of an obscene paper or writing, but the publishing it after it is prepared; nor does it forbid the possession of the same, but possession with intent to publish; thus showing clearly that congress did not intend that the preparation of a paper or writing should be regarded as the publication of it. The next section provides that "no obscene book, pamphlet, picture, paper, print, or other publication," etc., shall be mailable, and is merely a declaration that the mails shall not be used for the accomplishment of the purposes prohibited in section 1; section 3 forbids the importation of the articles and things previously mentioned; section 4 punishes government officers who abet the violation of the act; and section 5 authorizes a search for and seizure of the things named, by United States marshals, that they may be condemned.

The statute was intended to be complete in its scope, and to prevent—*First,* the sale and circulation; *second,* the distribution by mail; *third,* the importation of the literature and articles referred to; and, *fourth,* the seizure and condemnation of the same; and, in order to determine what things are embraced by the act, its several provisions must be construed together.

It will be noticed that "writing" appears only in section 1,

as also do "drawing," "representation," "circular;" but it cannot be presumed that congress intended to prohibit the sale and circulation of these things, and yet permit them to be distributed by mail. Manifestly they were intended to be covered by the general designations used in section 2, and the latter, therefore, indicate to what class the things specified in section 1 must belong in order to be within the scope of the statute. Hence, although the word "writing" is not in section 2, it was evidently intended by that section to exclude from the mails all obscene writings which were "publications" of the classes known as books, pamphlets, or papers; and I think it manifest, from what has been said, that congress did not regard a private letter as such a publication, or within the act of 1873. If covered by that act, private letters could be examined and destroyed under the authority given marshals to search for and seize "any such article or thing." So far as "papers" or "writings" are concerned, the act of 1873 does not appear to have been changed by subsequent legislation. Section 2 of the act was revised by the act of July 12, 1876, in which the word "writing" was inserted in the list of non-mailable publications; but this was evidently done, not to enlarge the scope of the act of 1873, but because, in incorporating that act into the Revised Statutes of 1873, its several sections had been separated and classified, and, as they could not readily be viewed together as explaining each other, so much of section 1 was repeated in each separate section as was deemed necessary to make the meaning of the law clear. This repetition of the word "writing" in the Revision, therefore, did not render non-mailable any writing not made so by the act of 1873, or not belonging to the classes of publications, the sale and circulation of which that act sought to suppress. Similar repetitions of words of section 1 are found in the other, now separated, sections. Section 1 became section 5389 of the Revised Statutes, in the division of crimes; section 2 appears in section 3893, among the postal laws; section 4 is found in section 1785, relating to the duties of officers; and section 5 is section 2492, concerning imports. In each of these the words "paper," "writing," etc., now ap-

pear, although previously section **1** alone contained a full list of the prohibited articles, the other sections referring back to it by general terms. These separated sections also serve to further explain the meaning of the original statute.

Section 1785, Rev. St., provides that whoever, being "an officer, agent, or employe of the government of the United States, shall knowingly aid or abet any person engaged in any violation of any of the provisions of law prohibiting importing, advertising, dealing in, or exhibiting or sending or receiving by mail obscene or indecent publications, * * * shall be deemed guilty," etc. The language of this section shows that the provisions of law prohibiting sending or receiving by mail written or printed matter relates to publications. The words "paper" and "writing" appear in each of the above sections relating to the dealing in and circulating, the mailing, the importing, and the seizing and destroying of obscene matter; and those sections, being intimately related and contributory to one design, it must be assumed that all refer to the same class of papers and writings, and to none other. As private letters are evidently not among the papers or writings to which some of those sections relate, it follows that congress did not intend to embrace them within any of the provisions referred to. The term "publication," in the Revision, must also be presumed to have the same meaning as in the original act, wherein it expresses more than mere preparation, and possesses the added characteristic of proposed circulation and distribution. The latter part of the statute, relating to the taking of these contraband articles from the mails, also carries out this idea: it punishes not the mere taking, but the taking "for the purpose of circulating or disposing of" them. If it be urged that mailing a letter to another is a publication of it, the reply is that its mailable or non-mailable character must be determined prior to its admission to the mails, and before such a publication can occur.

There appears, therefore, little room for doubt, in view of the apparent intention of congress as expressed in the series of legislation referred to, that the scope of the statute does

not extend to papers or writings which are not publications within the evident meaning of the law. The object of congress has been declared by the United States supreme court to be to refuse the facilities of the mails for the "distribution of matter deemed injurious to the public morals." *Ex parte Jackson,* 96 U. S. 727. And in the case of *Bennett,* S. Dist. N. Y., 1879, it was said to be the prevention of the use of the mails "for the purpose of disseminating obscene literature." Both these declarations seem to except from the purview of the statute written communications of a private, personal nature, emanating from a single person, and exhibiting no purpose of going beyond the one directly addressed. As the court, in the *Woodhull Case* cited, remarked of newspapers, so it may here be said of private letters, that if it were the *intention to* include them nothing could have been easier than to add those words to the general list; but, on the contrary, the statute specifically refers to letters of a single class as contraband. After declaring indecent papers and writings nonmailable, it adds, "and every letter upon the envelope of which, or postal card upon which, indecent, lewd, obscene * * terms or language may be written." This addition would be needless if the words "paper" and "writing" were intended to cover every paper and all written matter, because postal cards and envelopes on which obscene language is written are both obscene papers and obscene writings. Hence, the special designation of postal cards and letters indicates that they were not embraced by the preceding words, "paper, writing, or other publications," and that it was not intended to exclude from the mails other letters than those so specifically described.

The reference to letters shows that congress had them in mind, and, by designating a certain class of them as nonmailable, there seems to have been an intention to confine the prohibition to that class, namely, those wherein the indecent matter is exposed to the inspection of others than the person directly addressed—a distinction in accordance with the spirit of the statute before suggested. The statute is a penal one, and must be strictly construed, and cannot be

extended by implication even for the purpose of embracing cases clearly within the mischief intended to be remedied. *Terrell* v. *Atwill*, 1 Blatchf. 151. A strict construction of the statute in question leaves little doubt as to its proper interpretation. Desirable as it may be that private letters containing indecent expressions should not be admitted to the mails, congress may not have seen fit to exclude them. Until 1865 it permitted the admission to the mails of all sorts of obscene and indecent matter, and it was not until 1873 that it excluded newspapers containing indecent articles; and it may well be doubted whether it has as yet deemed it wise to interfere with private letters which are outwardly unobjectionable. To determine whether the letter in question is within the scope of the statute, it is necessary to refer both to the letter itself and to the testimony relating to it. There is nothing indecent upon the envelope. It is addressed to the person to whom it was delivered, sealed, from the mail, and was first opened by him, and there is no evidence that, prior to that time, the letter enclosed, which is in the form of a private letter, was seen by or known to any one but its author.

There seems to be no doubt that such a letter is not among the class of letters which congress has declared non-mailable, and, if this view of the law is correct, the deposit of it in the mail was not a violation of the statute. If there is a fair doubt whether the act charged is embraced within the prohibition of the statute, the doubt is to be resolved in favor of the defendant. *United States* v. *Morris*, 14 Pet. 464; *United States* v. *Wiltberger*, 5 Wheat. 76; *United States* v. *Whittier*, 18 Alb. L. J. 110.

This conclusion renders it unnecessary for me to review the evidence bearing upon the question by whom the letter referred to was deposited in the mail, or to express an opinion thereon.

The case was not given to the grand jury.