THOMPSON v. SMITH et al.

No. 29882. May 20, 1941.

Rehearing Denied July 1, 1941.

*114 P. 2d 922.*

Deupree & McCabe, of Oklahoma City, for plaintiff in error.

Everest & Halley, of Oklahoma City, for defendant in error Tracy Smith.

Lewis R. Morris, County Atty., and B. C. Logsdon, Asst. County Atty., both of Oklahoma City, for defendant in error Wm. F. Vahlberg, County Treasurer.

Edw. M. Box and Floyd H. Norris, both of Oklahoma City, amici curiae.

HURST, J. The plaintiff, Tracy Smith, purchased three vacant lots in Oklahoma City at the 1939 tax resale, paying therefor $27. The total amount of delinquent taxes and special assessments due thereon at the time of the resale was $3,699.11. Temple G. Thomp-

son, the former owner, in due time sought to redeem the property from the tax sale by paying the amount for which the same was sold to Smith, together with interest as provided in section 14, art. 31, ch. 66, S. L. 1939, 68 O.S.A. § 432m. Smith filed this action to enjoin the treasurer from receiving the money or issuing the redemption certificate, making Thompson a party defendant. The trial court entered judgment refusing to enjoin the redemption, but directing the county treasurer to credit the amount of the redemption money on the amount due as taxes and special assessments, but not to cancel such taxes and special assessments remaining unpaid. Thompson appeals.

The sole question presented is whether redemption by the former owner, as provided in section 14, by paying less than the amount of taxes, special assessments, penalty and costs assessed against the property has the effect of canceling the unpaid portion of such taxes and special assessments.

Thompson argues that his right to receive a title free from such unpaid taxes and special assessments when he pays the sale price is plainly set forth in section 14, when considered in connection with the provision in section 7 that the issuance of the resale deed "shall effect the cancellation and setting aside of all delinquent taxes, assessments, penalties and costs previously assessed or existing against said real estate; and shall vest in the grantee an absolute and perfect title in fee simple to said lands," and that the law does not authorize the reinstatement of the taxes after they have thus been canceled.

Both Smith and the county treasurer argue that it was not the intention of the Legislature to cancel all the delinquent taxes and special assessments, by redemption under section 14, and that by the redemption the former owner is restored to the position he occupied prior to the resale except that he is given credit upon the delinquent taxes for the amount paid for redemption. They argue that if this is not the correct construction of the statute and if it were intended by the Legislature to cancel the delinquent taxes and special assessments, the statute is violative of section 53, art. 5, of the Constitution in that it would authorize the extinguishment of the tax liability.

Section 14 was set out and considered by this court in Roberts, County Treasurer, v. Newell, 187 Okla. 139, 101 P. 2d 824, and was considered in Strawn v. Holliman, County Treasurer, 187 Okla. 142, 101 P. 2d 823, but the question here presented was not involved in those cases.

We think the construction of section 14 urged by Smith and the county treasurer, and placed thereon by the trial court, is the correct one. The purpose of the law was the collection of the taxes, not the remission thereof. The construction contended for by Thompson would render the law unconstitutional and void. Ivester v. State, 183 Okla. 519, 83 P. 2d 193; State ex rel. Tharel v. Board of County Com'rs of Creek County, 188 Okla. 184, 107 P. 2d 542. And in case of doubt as to its meaning, it should be so construed as to render it valid. Union Indemnity Co. v. Saling, 166 Okla. 133, 26 P. 2d 217; Royal Baking Co. v. Oklahoma City, 182 Okla. 45, 75 P. 2d 1105; 25 R.C.L. 1000; 12 C. J. 787; 16 C.J.S. 234.

The right of redemption given by section 14 had the effect of vesting in the purchaser at the resale only an equitable interest. Until the expiration of the redemption period his right was to receive the redemption money with interest as specified. As long as the right of redemption existed the purchaser's interest was similar to the interest of a holder of a tax sale certificate (Eager v. Pugh, 123 Okla. 207, 253 P. 41) or to the right of a purchaser of land at a mortgage foreclosure sale in those states where redemption is permitted after the sale. See 42 C. J. 246, note 93. And as long as the former owner had the absolute right of redemption as provided in section 14, title to the property remained in him, but was subject to be-

ing divested by his failure to timely exercise the right of redemption. After the expiration of the redemption period, without the right being exercised by the former owner, a fee-simple title was vested in the purchaser.

To hold otherwise would be to render the various provisions of the act inconsistent. It will be noted that the redemption payment is to be made to the treasurer, not to the purchaser, and the certificate of redemption, which effects the cancellation of the resale deed, is issued by the treasurer. The Legislature did not intend to vest in the treasurer power to dispose of the property of another and abrogate his title without notice and without his consent, and for a price fixed by law. The right to redeem by a payment to the county is wholly inconsistent with the present vesting of title in the resale purchaser. And if the resale deed did not convey absolute title, it likewise did not effect the absolute cancellation of the taxes, assessments, penalties, and costs specified in section 7, but such provision of the deed became effective only when the deed became effective, namely, upon the expiration of the period of redemption without such right having been exercised. The provision of section 14 that redemption shall cancel the resale deed, and revest the property in the former owner "as fully as though no resale had been held," plainly indicates the intent of the Legislature to restore the title in the property to the former owner in the same condition as it was in prior to the resale. There is nothing in the act which discloses an intent to cancel all unpaid taxes if the property is redeemed.

Section 14 gave the taxpayer one more chance to save his property, but it did not purport to extinguish his tax liability and return the property to him free from such liability. To do so would be equivalent to permitting him to bid on his own property at the resale, which we have heretofore held he could not do. Brooks v. Garner, 20 Okla. 236, 94 P. 694; Grison Oil Corporation v. Lewis, 175 Okla. 597, 54 P. 2d 386. See, also, 26 R.C.L. 412; 61 C. J. 1198-1199.

Delinquent taxes are liabilities within the meaning of section 53, art. 5, of the Constitution, and any law which directly or indirectly releases or extinguishes them, in whole or in part, is violative of that constitutional provision. Ivester v. State, supra. To give the law the meaning for which Thompson contends would clearly effect the release of the former owner's liability in all cases where the property sold at the resale for less than the amount of the delinquent taxes. Also, it would enable a former owner whose property was sold to a third person for less than the amount of taxes due to redeem his property for the amount paid by the purchaser at resale, while one whose property was bought in by the county would be required to pay the full amount of taxes due. This would result in inequality and lack of uniformity in the collection of taxes which section 53, art. 5, was designed to prevent. State ex rel. Tharel v. Board of County Com'rs of Creek County, supra.

The Legislature, by sections 2, 15, and 16 of the act, manifested an intention to require a more strict compliance with the tax laws and prompt payment of taxes. Section 14 was enacted to mitigate the possible harshness of these sections when applied to property owners who, by reason of financial stress, were unable to avoid the loss of their property. It gave the property owner a final opportunity to provide for the payment of his taxes, and thus prevent the loss he would otherwise suffer.

Affirmed.

CORN, V. C. J., and RILEY, OSBORN, BAYLESS, GIBSON, and DAVISON, JJ., concur. WELCH, C. J., and ARNOLD, J., absent.