GOODALL et al. v. CITY OF CLINTON et al.

No. 32025. Sept. 25, 1945.

*161 P. 2d 1011.*

A. J. Welch, of Clinton, for plaintiffs in error.

Arney & Barker, of Clinton, for defendants in error.

HURST, V. C. J. This action was brought by the plaintiffs, Goodall and others, as owners and tenants in possession of three residence properties in the city of Clinton, to enjoin the defendants, the city of Clinton and the three members of its board of health, from carrying out an order of the city board of health, made October 26, 1943, declaring certain frost proof or Vogle type toilets in use on the three properties to constitute a public nuisance and directing that the nuisance be abated. From a judgment denying the injunction, the plaintiffs have appealed.

Plaintiffs' petition for injunction was based upon three grounds: (1) That the ordinances under which the board of health acted are void because not enacted, published, or signed as required by the city charter, (2) that the ordinances are void because they unconstitutionally delegate power to the board of health, and (3) that the order of abatement cannot be carried out until there has been a judicial determination by a court of the existence of a nuis-

ance. By answer, the defendants denied the allegations of the petition, and by a cross-petition, which they denominated a "supplement to answer," they alleged that the toilets constituted a public nuisance and asked that the court abate the same in the event it found the abatement proceedings by the board of health to be invalid for any reason.

An examination of the evidence convinces us that the finding of the trial court that the toilets constituted a public nuisance is supported by the evidence and is not clearly against the weight thereof. The evidence reasonably tends to establish that the toilets were so constructed and installed as to permit the sewage to backflow into the water line and thereby pollute the city water supply, particularly when the water pressure was low or the toilets were stopped up or not in good working order; that they had a direct connection with the water line; and that the toilets were in fact kept in an unsanitary condition, and were open to flies, rats, and vermin and gave off noxious odors constituting a health hazard and a public nuisance.

The plaintiffs argue the case under six propositions, and in disposing of such propositions we will refer to other matters shown by the record.

1. It is argued that the trial court committed error in overruling the motion of the plaintiffs to strike the new matter stated in the "supplement to answer," which in effect constituted a cross-petition asking the court to abate the nuisance if it should be held that the proceedings of the board of health were for any reason invalid. However, since the court did not abate the nuisance as therein requested, but instead simply denied the injunction, the error, if any, was harmless and does not entitle the losing party to a reversal of the judgment. 12 O. S. 1941 §§ 78, 636; 22 O. S. 1941 § 1068.

2. The plaintiffs argue that, since the new matter just referred to was not stricken, the court committed error in refusing the demand of plaintiffs for a jury trial. It is only in cases properly

triable to a jury, such as damage suits, that the fact of the existence of a nuisance is for the jury. This being an injunction case, is one of equitable cognizance, and the plaintiffs were not entitled to a jury trial as a matter of right. 12 O. S. 1941 §§ 556, 557; Mathews v. Sniggs, 75 Okla. 108, 182 P. 703; 35 C. J. 170; 28 Am. Jur. 470. Even a suit to abate a nuisance, such as the defendants' cross-petition, is not, as argued by plaintiffs, triable to a jury as a matter of right. Gragg v. State, 73 Okla. 132, 175 P. 201.

3. Plaintiffs argue that the ordinances under which the board of health acted are void because not published as required by the city charter.

In 1916, the city adopted a charter, section 8 of article 3 of which provides:

"All ordinances, except emergency ordinances, shall be published in some newspaper of general circulation in the city of Clinton, and the same shall not be in full force and effect until the expiration of ten days from the publication thereof."

In 1930, the board of commissioners of the city caused the ordinances to be revised, and the Revised Ordinances were adopted and published in book form, 100 copies being published and deposited with the city clerk, but the Revised Ordinances were not published in a newspaper of general circulation in the city. The ordinance adopting the Revised Ordinances provided that they should be in full force on and after the day in which 50 copies in book or pamphlet form should be deposited with the city clerk. The Revised Ordinances consist of 768 sections and cover some 260 printed pages. The authority of the board of health to abate the nuisance in question on behalf of the city is to be found in said Revised Ordinances. No proof was made of any such ordinances that had been enacted and published prior to 1930. The plaintiffs do not contend that, if the Revised Ordinances are in force, and are constitutional, the board of health is without authority to abate the nuisance in the manner attempted.

Our statute (11 O. S. 1941 § 579) directs how city ordinances in general shall be published, and it contains this proviso:

" . . . Provided, however, that when the council of said city shall order a revision of ordinances of said city, a publication in the book or pamphlet of ordinances shall be deemed a publication under this section: Provided, further, that not less than fifty copies of said pamphlet or book of ordinances shall be published."

The question, then, is whether the quoted charter provision applies only to single ordinances and not to revised ordinances, or whether publication as authorized by the quoted statute will suffice.

It is clear that charter provisions of cities supersede state laws only that are in conflict therewith, and only to the extent of the conflict, and only when they are of purely municipal concern. 11 O. S. 1941 § 564; City of Muskogee v. Senter, 186 Okla. 174, 96 P. 2d 534. We think the manner of publishing city ordinances is a question of purely municipal concern. In adopting the Revised Ordinances and directing the manner in which they should be published, the board of commissioners probably construed the charter provision to refer only to single ordinances and not to a book of revised ordinances. The people of Clinton have acquiesced in this construction since 1930 and the revised ordinances have been considered in force since that time. The charter provision as to the manner of publishing ordinances does not expressly mention "Revised Ordinances," yet in another portion of the charter (article 3, section 5) it is provided that the enacting clause or caption "may be omitted when said ordinances are revised and digested under the order of the board, and when published in book form," thus recognizing that revised ordinances might be published in another manner. It would be a heavy financial burden on the city to require that several hundred pages of revised ordinances be published in a newspaper, and it would seem to be

unreasonable when published in book form. The construction thus placed upon this provision by the board of city commissioners, which has been acquiesced in by the people of the city for many years, is highly persuasive. Glasco v. State Election Board, 121 Okla. 119, 248 P. 642; American Druggists Fire Ins. Co. v. State Insurance Board, 184 Okla. 66, 84 P. 2d 614.

We are of the opinion, and hold, that the quoted charter provision was not intended to apply to a book of Revised Ordinances, and that it is not in conflict with the state statute authorizing their publication in pamphlet or book form, and that the state statute governs.

4. It is argued that, even if the ordinances under which the board of health sought to abate the nuisance were properly published, they are invalid in that they do not require notice to the persons affected before the board could summarily abate the nuisance, the nuisance not being one per se, that either legislative or judicial power is sought to be vested in the board of health, an administrative board, and that hence due process is denied the plaintiffs.

The city charter (article 1, section 3) provides that " the City of Clinton shall have power to enact and enforce all ordinances necessary to protect health, life and property, and to prevent and summarily abate and remove nuisances . . ." Section 8 of article 2 of the city charter authorizes the board of commissioners to "create, by ordinance, such offices from time to time, in addition to the offices provided herein, as they may deem necessary to carry out the provisions of this charter, define the duties of such office, and delegate to such office the power and authority for the execution of the duties of said office." By section 133, art. 1, chap. 4, of the Revised Ordinances, a board of health consisting of the mayor, superintendent of health, and the chief of police, was created, and by subsequent sections its duties were prescribed, and by section 140 it was authorized "to cause nuisances to be abated and re-moved at the expense of the city." By sections 460 to 475 of the Revised Ordinances, our statutes (50 O.S. 1941 §§ 1 to 15) defining nuisances and providing for their abatment were enacted as a part of the city ordinances. And by section 471 of the Revised Ordinances it was provided that "in all cases of abatement except emergencies, not less than three days written notice shall be given the party to appear and show cause why such nuisance should not be abated." Sections 476 to 479 prescribe the procedure and method of summary abatement of nuisances and require notice of not less than three days to the party affected and an opportunity to be heard, except in case of emergencies, before the order of abatement by the board of health or the city commissioners can be made and enforced.

By 50 O. S. 1941 § 16, cities are given the power to determine what shall constitute a nuisance and "summarily to abate any such nuisance after notice to the owner, and an opportunity for him to be heard, if this can be given."

We are of the opinion that, under the charter provisions, above, the city could create the board of health and delegate to it the administrative duties here sought to be enjoined, and that the ordinances afford due process by requiring notice and an opportunity to be heard before the order of abatement may be made and carried out. It was for the board of commissioners of the city to determine whether such duties should be carried out by it, or by the board of health, or by some other officer or board. The acts of the boards of health were the acts of the city as authorized by 50 O. S. 1941 § 16.

In Calkins v. Ponca City, 89 Okla. 100, 214 P. 188, it was determined ex parte by the city board of commissioners that a nuisance existed, but the reasoning of the court in that case is applicable here. The preservation of the health of cities and towns is frequently committed to boards of health, and they are recognized by our statutes. See 63 O. S. 1941, chap. 1.

The plaintiffs concede that they were served with notice of the time and place of the hearing to determine whether, under the resolution declaring the toilets to constitute a nuisance, an order should be made abating the nuisance as required by section 477 of the Revised Ordinances. They appeared pursuant to the notice and were heard before the order of abatement was made.

Plaintiffs argue that the ordinances under which the board of health acted do not afford aggrieved persons a right of appeal, but that its action shall be final, and that the ordinances, therefore, deny them the right to have their rights adjudicated by the courts as provided by 63 O. S. 1941 § 34, which provides:

"Any person who has been aggrieved by any act, rule or regulation of said Boards of Health, shall have his right of action to have such issue tried in the district court of the county in which some member of the Board shall reside."

But it is not necessary to the validity of such ordinances that they provide for an appeal or judicial review. The statute gives that right, and the plaintiffs have, by this action, availed themselves of the right so given. The purpose of said statute is to afford a judicial review to see whether the board has acted within its jurisdiction, (1) whether it has followed the procedure outlined in the ordinances or statutes under which it acts, and (2) whether it has arbitrarily declared a thing to be a nuisance which clearly is not one in fact. 46 C. J. 759, § 365; 20 R. C. L. 391, § 13; 39 Am. Jur. 458, 466. The functions of the board of health are administrative in nature. They come under the police power. 39 Am. Jur. 455. They are to find the facts which, under the ordinances or statutes under which they proceed, constitute a nuisance, and are to make the order of abatement within the terms of the ordinances or statutes.

5. It is argued by plaintiffs that the trial court committed error in refusing to make his requested findings of fact and conclusions of law. At the commencement of the trial the plaintiffs orally requested the court to make findings of fact and conclusions of law. At the close of the trial the court made 18 separate findings of facts and three conclusions of law and incorporated them in the journal entry of judgment. Thereafter the plaintiffs submitted a request for findings of fact in 22 paragraphs and three conclusions of law, which the court refused to give. It is not necessary to review at length here the findings of fact and conclusions of law given and refused. We are of the opinion that the statute (12 O. S. 1941 § 611) was substantially complied with and that the findings made cover the material issues presented on conflicting evidence. Insurance Company v. Taylor, 34 Okla. 186, 124 P. 974; Maynard v. Central Nat. Bank, 185 Okla. 272, 91 P. 2d 653.

6. The plaintiffs argue that the court committed error in two respects in the admission of evidence.

a. It is contended that the court erred in admitting in evidence the resolution of the board of health declaring the toilets to constitute a nuisance. There is no merit in this contention. Section 476 of the ordinances under which the board acted required such a resolution. An important issue in the case was whether the board of health had proceeded in accordance with the city ordinances before making the order of abatement. The adoption of the resolution was the first step to be taken.

b. It is also argued that the court committed error in permitting the expert witnesses to refer to scientific periodicals and reports and to read extracts therefrom into the record. The evidence referred to related to the issue of the existence of a nuisance. The expert witnesses gave their opinions on the questions touched upon by the scientific material referred to. There was sufficient evidence that was clearly competent to establish the fact of a nuisance. Furthermore, it does not affirmatively appear that the trial court based its finding that a nuisance existed

upon the questioned evidence. Therefore, assuming that some of the scientific material was improperly read into the record, the error was harmless and will not justify a reversal. The case was tried to the court without a jury, and it will be assumed that the court based its finding upon the competent evidence. See 12 O. S. 1941 §§ 78, 636; 22 O. S. 1941 § 1068; Weitz v. Moulden, 109 Okla. 119, 234 P. 583.

Affirmed.

GIBSON, C.J., and OSBORN, DAVISON, and ARNOLD, JJ., concur. BAYLESS, WELCH, and CORN, JJ., concur in conclusion. RILEY, J., concurs in conclusion, but dissents to syllabus No. 4.