**Edna E. RUBLE, Appellee,**

v.

**Oran REDDEN et al., Appellants.**

**No. 44974.**

Supreme Court of Oklahoma.

Dec. 26, 1973.

William A. Vassar, Chandler, Meacham, Meacham & Meacham, Clinton, for appellants.

Andrew J. Moore, Woodward, for appellee.

Erwin & Butts, Chandler, for amicus curiae, Donald F. Farrell.

SIMMS, Justice:

The question presented is whether a newspaper which meets all the other requirements for publication of legal notices should be denied the official status of a legal publication because its newspapers are not reproduced within the county.

Under the facts and circumstances of the instant case, we hold that the requirement of printing set forth in 25 O.S.1971, § 106(c) should not be construed in its strict literal sense to deny the papers of plaintiffs in error the official status of legal publications.

Title 25, O.S. § 106 was amended in 1973, subsequent to filing of the appeal. The effect of this amendment will be treated in this opinion.

Reddens, appellants, defendants in the trial court, are owners and publishers of the *Dewey County News*, 51 years old, 1579 circulation; *Leedey Star,* 36 years old, 536 circulation; and, *Vici Beacon,* 59 years old, 944 circulation.

Edna Ruble, appellee, plaintiff in the trial court, is owner and publisher of the *Taloga Times Advocate,* which is 76 years old, 769 circulation, and along with her son and daughter-in-law, own two other newspapers in Dewey County; *Vici News,* 3 years old, 298 circulation; and, *Seiling News Record,* 3 years old, 1079 circulation.

The Reddens, defendants, have published legal notices in each of their newspapers since their inception. Plaintiffs complain, however, of Reddens continuing to publish legal notices after June 26, 1969, the date on which defendants began reproducing their newspapers outside the county.

The evidence is undisputed.

Defendants' newspapers are all distributed in Dewey County, Oklahoma, at Vici, Leedey, and Seiling, respectively. An office is maintained at each location for the respective newspapers. One of the defendant partners manages the newspaper at Vici, and another partner manages the newspaper at Seiling. An employee maintains the office at Leedey.

Each newspaper is distributed under a second class mailing privilege in Dewey County. Advertising and subscriptions are solicited; news is gathered; and, the papers are edited at the central office located in Seiling, Dewey County.

The material for the newspapers is typed; the typed material is put into columns; headlines are produced; and, advertising is prepared in the Seiling office. All this material is then pasted onto a "mock-up sheet" exactly as it will appear when the newspaper is issued, except for local pictures. The mock-up sheets are then taken to Cheyenne in adjoining Roger Mills County, where the defendants have another newspaper. There the newspapers are reproduced by the off-set method. After reproduction, the finished newspapers are returned to the local offices in Dewey County for distribution. Until June 26, 1969, the papers were not taken to Cheyenne. On that date the Reddens began using the off-set method of printing.

In her second amended petition, plaintiff complains that defendants' publishing of legal notices violates 25 O.S.1971, § 106, and "is injurious to the profits and good will of the plaintiff's newspaper business and is unfair competition . . . ."; "that such action will work irreparable injury to the plaintiff's said newspaper business . . . ."

For her first cause of action, plaintiff prays for an injunction restraining defendants from publishing any legal notices in their newspapers until the newspapers are printed in Dewey County; and, for her second cause of action, plaintiff asks for a "declaratory judgment determining that said newspapers are not newspapers entitled to publish legal notices."

The trial court rendered judgment for the plaintiff of both causes of action.

The pertinent portion of 25 O.S.1971, § 106, reads as follows:

"No legal notice, advertisement, or publication of any kind required or provided by any of the laws of the State of Oklahoma to be published in a newspaper shall have any force or effect as such, unless the same be published in a newspaper of the county which, during a period of one hundred four (104) consecutive weeks immediately prior to the first publication of such notice, advertisement or publication:

(a) has maintained a paid general subscription circulation in such county,

(b) has been admitted to the United States mails as second class mail matter,

(c) has been printed in the county where delivered to the United States mails; . . .,

(d) has been continuously and uninterruptedly published in such county."

The above statute was amended by Session Laws 1973, c. 5, sec. 1, effective March 6, 1973, by adding the provision giving the district court the power, under specified conditions, to allow a newspaper to retain its legal qualification even though it is printed outside the county. The conditions set forth in the amendment are as follows:

"Such order shall be issued by the district court upon satisfactory proof (1) that the newspaper can be printed more efficiently outside the county, (2) that the newspaper complies with all requirements for a legal newspaper as provided in this statute, and (3) that the said newspaper shall be entered in the United States mails in the city or town and in the county in which the newspaper is otherwise qualified to publish legal notices, advertisements or publications of any kind required or provided for by any of the laws of the State of Oklahoma."

■ We find that the 1973 amendment to 25 O.S.1971, § 106 restricts, rather than enlarges upon a newspaper's right to reproduce its papers outside the county, at least insofar as the instant case is concerned. We hold that prior to the 1973 amendment of the statute, a newspaper, under certain conditions, could have its reproduction facilities outside the county. The 1973 amendment to § 106 merely codifies the conditions and sets forth the additional requirement of an order from the district court.

■ Plaintiff urges that the word "printed" should be strictly construed to require the entire process of the newspaper business to be carried on within the county where the legal notice is published. Defendant alleges 25 O.S.1971, § 106, is unconstitutional.

The legislature has an interest in seeing that the publication of legal notices is accomplished in a manner most likely to reach the persons affected by or interested in the notice. The circulation, distribution, and publication requirement of the statute satisfied the legislature's concern. The further requirement of printing within the county is not unreasonable and violative of the constitution if the word "printed" is not too strictly defined. It is a fundamental and established principle that where there are two possible interpretations of a statute, one which would render the statute unconstitutional, and another which would render the statute valid, the Court should adopt the construction which will uphold the statute. Thompson v. Smith, 189 Okl. 217, 114 P.2d 922 (1941).

We are of the view that a strict construction of the word "printed" leads to an unconstitutional result in 25 O.S. § 106, prior to the 1973 amendment. On the other hand, a more liberal interpretation of the word "printed" would render the statute constitutionally valid.

The plaintiff correctly points out that the legislative history of § 106 would seem to indicate that the legislature intended the word "printed" to require more than mere publication within a county. Moreover, in 1935, this Court distinguished printing from publishing in Cox v. First Mortgage Loan Co., 173 Okl. 392, 48 P.2d 1060, 1063 (1935):

"The setting of type, the preparing of the forms for the press work, and the running of the paper through the machinery constitute the substantial and important part of the printing. In the case of U. S. v. Williams, (C.A.) 3 F. 484, 486, publishing is defined as follows: 'To publish is defined to issue, to make known what before was private, to put into circulation. * * * The idea of publicity, of circulation, of intended distribution, seems to be inseparable from the term 'publication.' "

This Court further stated why a strict requirement of printing should not be applied:

"Under our statutes a person is not required to print a paper in order to publish same, but can have the printing done elsewhere. To hold otherwise would mean that if anything went wrong with the equipment necessary to print the issues to the extent it would take a few weeks to have the same repaired, the owner would be required to secure other equipment either by purchase or some other means to print the paper, in order to retain it as a legal publication."

Nevertheless, in 1943, the legislature amended 25 O.S.1941, § 102 (the predecessor to 25 O.S.1971, § 106) by inserting the printing requirement. We do not interpret the word "printed" as used in the 1943 amendment to require that all the operations necessary to produce an edition of the newspaper must be completed within the county to fulfill the printing requirement. To so narrowly draw the line between reproduction and printing would work an undue hardship, without justification, on those who have been forced to consolidate their reproduction facilities, or who may have to look outside their own plant for reproduction. The 1973 amendment requiring judicial approval for printing outside the county sets the stage for a more narrow construction of the word "printed" than was reasonable under the statute prior to the 1973 amendment.

We can now say that with the offset method of printing, in a real sense, the typing of the material for the newspapers, cutting and pasting the typed material into columns and preparing the advertising constitute a substantial, integral, and important part of printing.

Indeed the legislature has recognized the economics of the newspaper business and expense of the modern off-set press when it passed the 1973 amendment to 25 O.S. § 106.

While the defendants' newspapers may now be forced to apply for a court order allowing them to continue reproducing their newspapers outside the county, we believe this is a reasonable limitation which will in the future permit us to more strictly define printing.

Reversed and remanded with Directions to enter judgment in accordance with the finding set forth in this opinion.

WILLIAMS, V. C. J., and IRWIN, BERRY, HODGES, LAVENDER, BARNES and DOOLIN, JJ., concur.

DAVISON, C. J., dissents.