**OKLAHOMA JOURNAL PUBLISHING COMPANY, a business corporation, Appellee,**

v.

**The CITY OF OKLAHOMA CITY, a municipal corporation, Appellant,**

and

**Journal–Record Publishing Company, Intervenor.**

No. 51988.

Court of Appeals of Oklahoma, Division No. 1.

July 17, 1979.

Rehearing Denied Aug. 21, 1979.

Certiorari Denied April 17, 1980.

Released for Publication by Order of Court of Appeals April 24, 1980.

**REYNOLDS, Judge.**

The sole question here presented is whether or not The Oklahoma Journal is a newspaper published in Oklahoma City as contemplated by Article II, Section 24, and Article IX, Section 4 of the Charter of the City of Oklahoma City.

The facts are undisputed. The Oklahoma Journal Publishing Company sued the City of Oklahoma City for a declaratory judgment contending that plaintiff's newspaper, The Oklahoma Journal, was qualified to bid for the right to publish the City's legal notices pursuant to the above cited charter provisions. The Journal–Record Publishing Company, publisher of the newspaper The Daily Law Journal Record, was permitted to intervene over plaintiff's objection.

The record reveals that the plaintiff's principal business office, its news stories are compiled and edited, the newspaper's composition is set–up, the actual printing, and the dissemination of the newspaper is from an address that is within the city limits of the City of the Midwest City. Plaintiff does however have three distribution offices within the city limits of Oklahoma City.

The trial court entered judgment declaring that The Oklahoma Journal was qualified to publish the City's legal notices. The City of Oklahoma City has perfected this appeal.

Under Article XVIII, Section 3(a) of the Oklahoma Constitution, the charter of a city is the organic law of that city. Charter provisions not inconsistent with the Constitution supersede state statutes pertaining to municipal affairs and become the superior law in matters pertaining to purely municipal matters. *Lee v. Norick*, Okl., 447 P.2d 1015 (1968). The manner of publishing city ordinances is a question of purely municipal concern, and city charter provisions pertaining thereto supersede state laws in conflict therewith. *Goodall v. City of Clinton*, 196 Okl. 10, 161 P.2d 1011 (1945).

Article II, Section 24, provides as follows:

Every Ordinance adopted *shall be published once in a daily newspaper publish-*

Turner, Turner & Green, by Kenneth W. Turner, Oklahoma City, for appellee.

Walter M. Powell, Municipal Counselor, by Barry L. Babcock, Oklahoma City, for appellant.

*ed and of general circulation in the City* and shall not take effect until thirty (30) days after such publication, except emergency ordinances passed as provided for in this Article, which shall take effect upon passage and be so published on the following day subject always to the referendum; and, provided further, that this section shall not apply to bond issues and special assessment ordinances, but such ordinances shall be governed by the provisions of the statutes of the State. (Charter, February 8, 1927, amended April 2, 1957.) (Emphasis added.)

Article IX, Section 4, provides in part as follows:

Such contracts shall be entered into only after advertisement *not less than one time in a daily newspaper published in the City*, or in the official City publication, if there be, inviting competitive bids; .... (Emphasis added.)

The cardinal rule for construction of a statute or ordinance, to which all other rules are subordinate, is to ascertain the intention of the legislative body, which should ordinarily be done by consideration of the language of the statute or ordinance as a whole in light of its general purpose and object. *Seventeen Hundred Peoria, Inc. v. City of Tulsa, Okl.*, 422 P.2d 840 (1966); *Adams v. Fry*, 204 Okl. 407, 230 P.2d 915 (1951). Where the language is plain an unambiguous and its meaning clear, the enactment will be accorded the meaning as expressed by the language therein employed. *Greenlease–Ledterman, Inc. v. Hawkins*, 199 Okl. 331, 186 P.2d 318 (1947).

A plain reading of Article II, Section 24, and Article IX, Section 4 reveals that there are two distinct requirements to be satisfied by a newspaper seeking to qualify to publish the legal notices therein, to–wit: (1) the newspaper must be published in Oklahoma City, and (2) the newspaper must be of general circulation in Oklahoma City. It was stipulated that plaintiff's newspaper was in general circulation in Oklahoma City.

Plaintiff contends that The Oklahoma Journal satisfies the "published in" requirement because it is issued in, its contents are made known in, and it is circulated in Oklahoma City.

Plaintiff's contention merges the charter's two distinctly defined requirements into one. Under plaintiff's definition, to be "of general circulation" in Oklahoma City, a newspaper must be widely distributed therein and the newspaper's content must be directed thereto. To be "published in" Oklahoma City, the newspaper must be issued in, circulated, and its contents made known therein. To adopt plaintiff's construction would be to render the requirements redundant and would clearly not comport with the plain language of the charter's provisions.

The City of Oklahoma City proposes that a newspaper be considered published at the location where the newspaper has its principal offices and where the form and content of the newspaper is determined. The City derives its proposal from the definition of "publish" in Black's Law Dictionary and from a consideration of *Ruble v. Redden*, Okl., 517 P.2d 1124 (1973).

Black's Law Dictionary at page 1397, defines "publish" as follows:

To "publish" a newspaper ordinarily means to compose, print, issue, and distribute it to the public, and its subscribers, at and from a certain place.

In Oklahoma, printing and publishing are different concepts. *Cox v. First Mortgage Loan Co.*, 173 Okl. 392, 48 P.2d 1060 (1935).

In *Ruble v. Redden, supra*, the Supreme Court was not confronted with determining where a newspaper is published. Rather it determined whether a newspaper reproduced by the offset method in Roger Mills County was printed in Dewey County under the provisions of Title 25 O.S. 1971, § 106(c), when all other operations necessary to produce an edition of the newspaper were performed in Dewey County. The court held that the printing in the county requirement of § 106(c) would not be strictly construed, recognized the economics of the newspaper business, and held that the newspaper must

apply for a court order allowing them to continue reproducing the newspaper in Roger Mills County while remaining qualified to publish the legal notices of Dewey County.

In *Ruble*, the court set out the following factors as important to its determination: (1) the newspaper was distributed in the county, (2) the newspaper's office was located in the county, (3) the newspaper was entered into the U.S. mail in the county, (4) advertising and subscriptions were solicited, news gathered, and the paper was edited in the county, and (5) the "mock–up" which would constitute the layout of the actual newspaper to be distributed was produced in the county.

■ The City contends that consideration of factors other than where the newspaper's office is located and where its content and form are determined are inappropriate and unnecessary. The place of mailing is a requirement found in § 106(c) that is not here present. Furthermore, it is merely a matter of convenience. The newspaper's distribution or circulation is not a proper consideration in determining the place of publication.

Plaintiff proposes that this court adopt a balancing test utilizing the *Ruble* factors enumerated above. Plaintiff contends that there is no requirement in *Ruble* that each and every factor must have existed to uphold its ruling, and where some factors militate towards a finding that publication has occurred in a specific locale and where other factors do not, the factors should be weighed to arrive at the ultimate determination.

We reject plaintiff's definition as being inappropriate. A newspaper must be considered published in one readily ascertainable location. An examination of the relevant factors discerned from *Ruble* reveal the balance clearly in favor of holding The Oklahoma Journal being published in Midwest City because that is where its principal offices are located, that is where its content is determined, that is where it is edited, and that is the place from which the newspaper is disseminated.

■ It is our opinion that in the context of Article II, Section 24 and Article IX, Section 4 of the Charter of the City of Oklahoma City, a newspaper is considered published at the location where the newspaper has its principal offices and where its form and content is determined. Therefore, The Oklahoma Journal, though an exemplary publication serving the Oklahoma City metropolitan area, must be considered published in the City of Midwest City and as such is not qualified to bid for the right to publish the legal notices, contracts, and municipal ordinances of the City of Oklahoma City.

Accordingly, we reverse the judgment of the trial court.

REVERSED.

ROMANG, P. J., concurs.

BOX, J., not participating.