Dear Representatives, Graves
¶ 0 This office has received your letter requesting an Opinion addressing, in effect, the following question:
Does the Oklahoma State Treasurer have the authority, pursuantto 62 O.S.Supp. 1995, § 89.2[62-89.2], to invest State funds inguaranteed investment contracts?
¶ 1 Guaranteed investment contracts (hereinafter GICs) are investment arrangements offered by life insurance companies to large, tax-qualified corporate pension and profit-sharing funds, tax-exempt foundations and government entities. GICs provide guarantees of principal, interest and expense charges for a specified period on funds deposited with the insurance company. A GIC guarantees a specific rate of return on invested capital over the life of the contract. Although the insurance company takes all market, credit and interest rate risks on the investment portfolio, it can profit if its returns exceed the guaranteed amount. GICs are a conservative way of ensuring investors that their money will achieve a fixed rate of return.
¶ 2 Section 89.2(A) of Title 62 of the Oklahoma Statutes provides:
 The State Treasurer is directed to invest the maximum amount of funds under his or her control consistent with good business practices; provided that the Treasurer shall keep eighty percent (80%) or more of the money under his or her control invested during each fiscal year based on the average daily balances during said fiscal year. Except as otherwise provided for by law, such investments shall earn not less than the rate for comparable maturities on United States Treasury obligations. Except as otherwise provided for by law, the State Treasurer may purchase and invest only in:
 1. Obligations of the United States Government, its agencies and instrumentalities;
 2. Collateralized or insured certificates of deposit and other evidences of deposit at banks, savings banks, savings and loan associations and credit unions located in this state;
 3. Negotiable certificates of deposit issued by a nationally or state-chartered bank, a savings bank, a savings and loan association or a state-licensed branch of a foreign bank. Purchases of negotiable certificates of deposit shall not exceed ten percent (10%) of the cash available for investment which may be invested pursuant to this section. Not more than one-half (1/2) of the ten percent (10%) limit shall be invested in any one financial institution specified in this paragraph;
 4. Prime banker's acceptances which are eligible for purchase by the Federal Reserve System and which do not exceed two hundred seventy (270) days' maturity. Purchases of prime banker's acceptances shall not exceed ten percent (10%) of the cash available for investment which may be invested pursuant to this section. Not more than three-fourths (3/4) of the ten percent (10%) limit shall be invested in any one commercial bank pursuant to this paragraph;
 5. Prime commercial paper which shall not have a maturity that exceeds one hundred eighty (180) days nor represent more than ten percent (10%) of the outstanding paper of an issuing corporation. Purchases of prime commercial paper shall not exceed seven and one-half percent (7 1/2%) of the cash available for investment which may be invested pursuant to this section;
 6. Investment grade obligations of state and local governments. Purchases of investment grade obligations of state and local governments shall not exceed ten percent (10%) of the cash available for investment which may be invested pursuant to this section;
 7. Repurchase agreements provided that such agreements are included within the written investment policy required by subsection D of this section that have underlying collateral consisting of those items and those restrictions specified in paragraphs 1 through 6 of this subsection; and
 8. Money market funds regulated by the Securities and Exchange Commission and which investments consist of those items and those restrictions specified in paragraphs 1 through 7 of the subsection.
62 O.S.Supp. 1995, § 89.2[62-89.2](A).
¶ 3 The initial objective of statutory construction is to determine the intent of the Legislature. Oklahoma City NewsBroadcasters Association v. Nigh, 683 P.2d 72, 75 (Okla. 1984). Where the language of a statute is clear and unambiguous, and its meaning clear, no occasion exists for application of construction rules, the statute is accorded the meaning as expressed by the language employed. Oklahoma Journal Publishing Company v. Cityof Oklahoma City, 620 P.2d 452, 454 (Okla.Ct.App. 1980).
¶ 4 Subparagraph A of Section 89.2 clearly provides that "the State Treasurer may purchase and invest only" in the eight investment vehicles specifically listed. It takes no exercise of statutory construction to interpret this provision as limiting the Treasurer to the listed items.
¶ 5 The policy contained in 62 O.S.Supp. 1995, § 89.2[62-89.2] is that the State Treasurer will invest in extremely conservative,specifically listed investments. The statute is in no way ambiguous. While guaranteed investment contracts are generally considered conservative investments, they are not specifically listed as permissible under Section 89.2. Therefore, the State Treasurer lacks authority to invest State funds in guaranteed investment contracts.
¶ 6 It is, therefore, the official Opinion of the AttorneyGeneral that:
 The Oklahoma State Treasurer does not have authority, pursuantto 62 O.S.Supp. 1995, § 89.2[62-89.2], to invest State funds in guaranteedinvestment contracts.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
DOUGLAS F. PRICE ASSISTANT ATTORNEY GENERAL