Dear Representative Hutchison,
¶ 0 This office has received your request for an Official Opinion asking the following questions:
1. May a municipality purchase or condemn real propertyoutside the corporate limits of the municipality in a countyother than the county where the municipality is located?
 2. If a municipality can purchase or condemn real propertyoutside the county of its location and outside its corporatelimits, is the municipality exempt from paying ad valorem taxeson such property?
 3. If the municipality is exempt from ad valorem taxation onsuch property, can the Legislature impose an "in lieu of advalorem tax" on such property?
¶ 1 Your first question seeks a determination as to whether Oklahoma law permits a municipality to purchase or condemn real property in a county other than the county where the municipality is located and which is outside the corporate limits of the municipality.
¶ 2 Pursuant to Article XVIII, Section 3(a) ofthe Oklahoma Constitution and 11 O.S. 13-101 (1991), any city or town containing a population of at least two thousand (2,000) inhabitants may frame a charter for its own government. Although provisions of a city charter may not contravene state constitutional provisions, the provisions of a city charter prevail when they conflict with state law as to purely municipal matters or concerns. See Vinson v. Medley, 737 P.2d 932, 936
(Okla. 1987). General laws of the state which address matters of state-wide concern, however, control over conflicting charter provisions. See City of Pryor Creek v. Public Service Company ofOklahoma, 536 P.2d 343, 346 (Okla. 1975). In Ramsey v. Leeper,31 P.2d 852 (Okla. 1933), the Oklahoma Supreme Court determined that the power of a city to acquire property beyond its corporate limits is governed by the state statutes relating thereto. Therefore, to answer your first question, a review of relevant statutory authority is required.
¶ 3 Municipalities have been granted the power to, either through purchase or the exercise of eminent domain, acquire real estate. Specifically:
Every municipality shall have the right to:
 2. Acquire, own, and maintain, within or without its corporate limits, real estate for sites and rights-of-way for any municipal purpose including but not limited to public utility and public park purposes, and for the location thereon of waterworks, electric light and gas plants and other facilities for generating or distributing energy, ports, airports, hospitals, quarantine stations, garbage reduction plants, pipelines for the transmission and transportation of gas, water, stormwater, and sewerage, and for any plant for the manufacture of any material for public improvement purposes and public buildings;
 3. Exercise the right of eminent domain for any municipal purpose, within or without its corporate limits, and to establish, lay, and operate any plant or pipeline upon any land or right-of-way taken pursuant to eminent domain. Any business or profession which is affected by the right of eminent domain as exercised pursuant to the provisions of this section shall be considered as a property right of the owner thereof and proper allowance therefor shall be made[.] (emphasis added).
11 O.S. 22-104 (1998).
¶ 4 The initial objective of statutory construction is to determine the intent of the Legislature. See Oklahoma City NewsBroadcasters Association v. Nigh, 683 P.2d 72, 75 (Okla. 1984). Where the language of a statute is clear and unambiguous, and its meaning clear, no occasion occurs for application of construction rules; the statute is accorded the meaning as expressed by the language employed. See Oklahoma Journal Publishing Company v.City of Oklahoma City, 620 P.2d 452, 454 (Okla.Ct.App. 1979). Subsection 2 of 11 O.S. 22-104 (1998) authorizes a municipality to acquire, own, and maintain real estate within or without its corporate limits. This power is in no way limited by county boundaries. Therefore, a municipality may purchase real property in a county other than the county where the municipality is located. Likewise, Subsection 3 of 11 O.S. 22-104 (1998) authorizes a municipality to exercise the right of eminent domain "within or without its corporate limits." This authorization is not limited by county boundaries. Therefore, a municipality may condemn real property in a county other than the county where the municipality is located. There is no provision in the Oklahoma Constitution which limits a municipality based upon county boundaries.
¶ 5 Your second question seeks determination as to whether municipal real property acquired through condemnation or by purchase is exempt from ad valorem taxes.
¶ 6 The Oklahoma Constitution provides:
 [A]ll property . . . of the municipalities of this state . . . shall be exempt from taxation. . . .
OKLA. CONST. Article X, Section 6.
¶ 7 A parallel legislative enactment has been codified since the statehood era. See R.L. 1910, 7303; see now 68 O.S.2887(2) (1998). The exemption is all-inclusive, and applies regardless of the use to which property is put. See Sublett v.City of Tulsa, 405 P.2d 185, 198 (Okla. 1965). Any property, regardless of location, owned by a municipality is, pursuant to the provisions of Article X, Section 6, exempt from ad valorem taxation.
¶ 8 Your third question addresses whether the Legislature may impose a tax in lieu of ad valorem upon the exempt property of municipalities. Acts of the Legislature are deemed constitutional and the Legislature is given wide discretion in matters of fiscal concern. Legislative acts are presumed constitutional and will be upheld unless "clearly, palpably and plainly inconsistent with the Constitution." Kimery v. Public Service Co. of Oklahoma,622 P.2d 1066, 1069 (Okla. 1980). Further, the Oklahoma Supreme Court has held that the Legislature has plenary power as regards to fiscal affairs of the state. See Boswell v. State,74 P.2d 940 (Okla. 1937). The following quote appears in Boswell:
 It is conceded that the control of the fiscal affairs of the state is a legislative function and that the power of the Legislature in the exercise of such control is plenary, subject only to constitutional restrictions[.]
Id. at 942
¶ 9 The Oklahoma Supreme Court has held that except to the extent that the constitutional provisions granting exemptions are self-executing the Legislature is vested with the power to qualify, curtail or annul any exemption from taxation, but it is without power to grant exemptions other than those recognized by the constitution, or to enlarge the exemptions so recognized.See County Assessor v. Carpenters Joiners Local No. 329,211 P.2d 790, 794 (Okla. 1949).
¶ 10 In Independent School District No. 9 v. Glass,639 P.2d 1233 (Okla. 1982), the Supreme Court reviewed a claim by the Ford Motor Company that certain of its properties were constitutionally exempt and that the Legislature could not, by statute, abridge the company's right to claim exemption. The following quote appears at page 1238:
 Unless the constitutional provision which grants the exemptions is self-executing, the Legislature may qualify, curtail or annul any exemption. Constitutional provisions which exempt certain classes of property or those which direct that the Legislature shall not tax designated property are self-executing. These provisions are operative without supplemental or enabling legislation. The Legislature may not abridge or extend a constitutional provision which is a self-executing grant of power to the taxpayers if the provision is self-complete. Provisions which authorize the Legislature to exempt specified classes of property or requiring the exemption by enactment of general laws are not self-executing or operative until the necessary legislation is enacted. The Legislature can not grant exemptions which are not constitutionally unrecognized or enlarge constitutional exemptions. Nor may the Legislature require a certain procedure to be followed in claiming the exemption which will nullify the exemption and validate an illegal tax. Article X, Section 6(A) which grants the freeport exemption is self-executing. Because the constitutional provision is self-executing, the property is not subject to taxation and the tax assessed was illegal and void.
¶ 11 The provisions of Article X, Section 6 are, like the provisions of Article X 6(A) (the freeport exemption), self-executing and require no supplemental or enabling legislation. See City of Hartshorne v. Dickinson, 249 P.2d 422,424 (Okla. 1952). Therefore, the Legislature may not, by statute, abridge the constitutional self-executing grant of exemption to property of municipalities. Any authority to assess a tax in lieu of ad valorem tax on otherwise exempt property must be supported by some specific provision of the Oklahoma Constitution. No such authority exists and the Legislature is therefore without power to levy such an in lieu tax.
¶ 12 It is, therefore, the Official Opinion of the AttorneyGeneral that:
 1. The Oklahoma Constitution does not prohibit a municipalityfrom purchasing or condemning real property in a county otherthan the county where the municipality is located regardless ofwhether the property is outside the corporate limits of suchmunicipality.
 2. A municipality is exempt pursuant to Article X, Section 6of the Oklahoma Constitution from paying ad valorem taxes on anyof its property.
 3. Because the provisions of Article X, Section 6 areself-executing, the Legislature may not abridge the exemptionprovided therein by imposing an in lieu of ad valorem tax onproperty exempted by Article X, Section 6.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
DOUGLAS F. PRICE ASSISTANT ATTORNEY GENERAL