753 P.2d 1260

**EXPRESS PUBLISHING, INC., an Idaho corporation, Plaintiff–Respondent,**

v.

**The CITY OF KETCHUM, a municipal corporation, Defendant,**

and

**E–Dah–Hoe Publishing Co., Inc., Intervenor–Appellant.**

**No. 16900.**

Supreme Court of Idaho.

April 22, 1988.

Lawson & Peebles, Ketchum, for appellant. Edward A. Lawson argued.

Luboviski, Wygle & Fallowfield, Ketchum, for respondent. Barry J. Luboviski argued.

SHEPARD, Chief Justice.

This is an appeal in a declaratory judgment action between two newspaper publishers, each seeking to be designated as the official newspaper of a municipality. We affirm.

I.C. § 50–213 provides: "The city council of each city shall, by ordinance, designate a newspaper within the provisions of title 60, Idaho Code, to be the official newspaper of that city...." In January 1986 the *Wood River Journal* (E–DAH–HOE Publishing Co.) requested the city of Ketchum, Idaho to designate the *Wood River Journal* as the official newspaper of Ketchum. Shortly thereafter *Idaho Mountain Express* (Express Publishing, Inc.) made its request that the *Idaho Mountain Express* be designated the official newspaper of Ketchum. The Ketchum City Council considered the requests of the two newspapers and determined that the word "publish" as used in I.C. § 50–213, means to "disseminate" or to "circulate." The council found that the *Wood River Journal* was disseminated and circulated in Ketchum, and hence concluded that the *Journal* was "published" in Ketchum. The Ketchum City Council then passed Ordinance No. 4015 designating the *Wood River Journal* as the official newspaper of the city of Ketchum.

Thereafter the *Express* instituted the present action against the city of Ketchum seeking mandamus and a declaratory judgment on a variety of legal theories. The *Wood River Journal* was allowed to intervene in that action.

Following a motion for summary judgment by the *Express* the trial court correctly restricted the issues to a very narrow focus, concluded that the *Idaho Mountain Express* is the *only* newspaper "published" within the city limits of Ketchum, and awarded summary judgment on that issue to *Idaho Mountain Express*. Thus, the determination of the Ketchum City Council and its ordinance was reversed. The court correctly observed that while there were other allegations and issues raised, they were not necessary for resolution. The essence of the trial court's decision appears to be that its ruling that the *Idaho Mountain Express* is the only newspaper "published" within Ketchum was dispositive of the case and all other issues were effectively subsumed therein. We agree.

There are no disputed issues of material fact bearing upon the narrow question decided by the trial court. We were informed at oral argument that neither newspaper is actually printed within the limits of Blaine County. It appears that both newspapers meet the qualifications for newspapers printing legal notices. I.C. § 60–106.

The Wood River Valley is in Blaine County, Idaho, and contains four municipalities, Bellevue, Hailey, Ketchum and Sun Valley. Hailey is the county seat of Blaine County. Ketchum is approximately 11 miles north of Hailey. Hailey and Ketchum are the principal population centers of Blaine County and the Wood River Valley. The *Wood River Journal* has been in existence since 1881 and its principal office is located in Hailey. It maintains a second-class mailing permit through the Hailey post office and also a mailing permit at Ketchum where the *Journal* maintains an additional office. The *Journal* maintains that part of its news gathering activity takes place in Ketchum and that advertising is sold in Ket-

chum. It appears conceded that the *Wood River Journal* has a substantially larger circulation than does the *Idaho Mountain Express*.

The *Idaho Mountain Express* is a newspaper of much more recent vintage. It maintains its principal office in Ketchum and has a second-class mailing permit from the Ketchum post office. The evidence before the trial court indicates that the main office of the *Express* is open eight hours a day, five days a week. The type is set, photographs and advertising copy, and all of the other accouterments of putting out a newspaper (except for the actual printing) take place in the Ketchum office of the *Express.*

■■■ Based on the above facts, and his view of the strictures of I.C. § 50–213, the trial court correctly concluded that the only question presented to him on summary judgment was whether *Idaho Mountain Express* was the *only* newspaper "published" within the city limits of Ketchum. As above noted, the district court concluded that the *Express* was the *only* newspaper "published" within the city limits of Ketchum.

The *Wood River Journal* asserts that the word "publish" as contained in I.C. § 50–213 must be given a meaning "to disseminate" or "to circulate." The district court concluded otherwise and stated: "The language of I.C. § 50–213 manifests a legislative intent to distinguish a newspaper's place of publication from its place of circulation." We agree.

We are cited to no Idaho case law which appears in point. However, decisions of other jurisdictions persuade us that the trial court was correct. In *Oklahoma Journal Publishing Company v. City of Oklahoma City,* 620 P.2d 452 (Okla.Ct.App. 1979), a newspaper company brought suit against the municipality for a declaratory judgment contending that its newspaper was qualified to publish the city's legal notices. That court stated: "A newspaper must be considered published in one readily

ascertainable location." Such "readily ascertainable location" was stated by the court as "where the newspaper has its principal or main office which is where the newspaper's form and content are determined." 620 P.2d at 455.

In *City of Plainfield v. Courier News,* 172 N.J. 171, 369 A.2d 513, 522 (1976), the Supreme Court of New Jersey had for consideration a substantially similar pattern of fact and law. There the statute required that official notices be published "in a newspaper published and circulating in the municipality, ..." 369 A.2d at 522. The *Courier News* had served as the official newspaper for Plainfield but had moved its headquarters from Plainfield to another town approximately nine miles away. The New Jersey Court held that a newspaper cannot have more than one place of publication, and that the place of publication of the *Courier News* was at its new headquarters, albeit it maintained a branch office in Plainfield. The New Jersey Court listed some of the factors relating to the "publishing" of a newspaper, *i.e.*, final editing, printing, correction of printed proofs, assembly, bundling, truck delivery and mailing. The Court concluded:

> But the maintenance of what is essentially a small branch office, like the one operated by the *Courier News* in Plainfield, is not enough to constitute "publication" there. If it were, as Judge Halpern pointed out in his dissent, a large metropolitan newspaper might open branch offices in all the communities in which it circulates and become eligible, without more, to publish their legal advertisements. We are convinced that such a result is directly in conflict with the Legislature's evident wish to have legal advertisements published in local newspapers, with community ties. 369 A.2d at 521–522.

Hence, the Court held that the *Courier News* was not published within the city of Plainfield and was not qualified to serve as Plainfield's official newspaper.

The maintenance of a satellite office as qualifying for a place of publication was

commented upon in *Montesano v. Liberty Warehouse County*, 121 N.J. 124, 1 A.2d 462 (1938). There the Court stated:

> ... [T]he place of publication of a newspaper is where the paper is first put into circulation, where it is first issued to be delivered or sent, by mail or otherwise, to its subscribers. *People ex rel. O'Connell v. Read*, 256 Ill. 408, 100 N.E. 230, Ann.Cas. 1913E, 293; *State v. Bass*, 97 Me. 484, 54 A. 1113. To give the word such a meaning as would bring within its application any newspaper circulating in a municipality would quite nullify the obvious intent of the legislation, *for it is likely that there is no municipality in which newspapers from some source do not circulate, and we think that the maintenance of an office for convenience and expedition in effecting local distribution does not suffice to constitute publication.* We are left with a very incomplete stipulation of the facts relating to the publishing incidents of the newspaper in question. But upon the record placed before us our conclusion is that the attributes of the office maintained in Union City and the characteristics of the distribution and circulation within that municipality were insufficient to constitute the statutory publishing. (Emphasis added.) 1 A.2d at 463–464.

The above-noted decisions from other jurisdictions, while not binding, are deemed to be persuasive on the issue here. It is clear that under the tests set forth in the above decisions that *Idaho Mountain Express* is published within the city limits of Ketchum. We deem it also clear that the *Journal*'s maintenance of a branch or satellite office in Ketchum does not meet the tests laid out in the above decisions, and hence the *Wood River Journal* is not "published" within the city limits of Ketchum.

We hold that the legislative intent in the enactment of I.C. § 50–213 is clear, and supports our conclusion. In the event that the legislature in its wisdom disagrees with our conclusion, it will be a simple matter for it to amplify the language of the statute to conform to the assertions of the *Wood River Journal* that a newspaper need only be circulated or disseminated within a municipality to be qualified for the designation of the official newspaper of that municipality.

The decision, judgment and orders of the district court are affirmed. Costs to respondent.

BAKES, BISTLINE and HUNTLEY, JJ., and McQUADE, J. Pro Tem., concur.