The Honorable W.J. "Bill" McCuen Secretary of State State Capitol Little Rock, Arkansas 72201-1094
Dear Mr. McCuen:
This is in response to your request for an opinion on three questions regarding the publication of state-wide ballot issues.[1] Specifically, you indicate that A.C.A. §7-9-113(c) requires the Secretary of State to publish "the number, the popular name, the ballot title, and a complete text . . ." of ballot issues. This year, you note, there will be three issues referred by the General Assembly and three issues initiated by petition of the people,[2] and you indicate that the publication will be quite voluminous. In this regard you pose the following three questions:
 1. Does this publication have to be placed in the "legal notices" section of the classified advertising section of the newspaper or could it be placed in some other section of the newspaper, prominently designated as a "legal notice?"
 2. Would it be permissible to publish these issues in a tabloid-style" supplement" to be inserted in each issue of the newspaper?
 3. Would publication by printing or inserting a supplement in a newspaper with a state-wide circulation (Arkansas Democrat-Gazette) constitute sufficient compliance with the requirements in A.C.A. § 7-9-113(b)(1)?
The statute to which you refer, A.C.A. § 7-9-113 (Repl. 1993), provides in pertinent part as follows:
 (b)(1) Before the election at which any proposed or referred measure is to be voted upon by the people, notice shall be published in four (4) weekly issues of some newspaper in each county as is provided by law.
* * *
 (c) At least one (1) notice shall contain the number, the popular name, the ballot title, and a complete text of the measure to be submitted and shall be published in a camera-ready format in a type no smaller than eight point (8 pt.) type. . . .
With regard to constitutional amendments referred by the General Assembly, Arkansas Constitution, art. 19, § 22 provides that:
 . . . such proposed amendments shall be entered on the journals with the yeas and nays, and published in at least one newspaper in each county, where a newspaper is published, for six months immediately preceding the next general election. . . .
Amendment 7 to the Arkansas Constitution, which addresses ballot measures initiated by the people, simply states that "[a]ll measures submitted to a vote of the people by petition under the provisions of this section shall be published as is now, or hereafter may be provided by law." It appears, therefore, that A.C.A. § 7-9-113 is the law governing publication of such initiated measures.
With regard to your first question, I can find no requirement in the statute or the constitutional language cited which requires that the publication be placed in the "legal notices" section of the newspaper. I have found no case law authority in Arkansas or any other state precisely addressing the question. The Attorneys General of two other states, however, have concluded, where the statute was silent on the point, that the publications did not have to appear in the "legal notices" section. See Op. Att*y. Gen. Alaska 566-092-85, (concluding that the publication did not have to be in the "legal notices" section and could be published in a "display advertisement format" instead of a "legal notice format"); and Op. Att*y. Gen. Hawaii 89-004 (no statutory or case law authority required that mandatory publication appear in the "legal notices" section). It is therefore my opinion, in light of the Arkansas statute, and the sparse secondary authority on point, that the publications do not have to appear in the "legal notices" section of the newspaper.
The answer to your second question is likewise not governed specifically by any statutory or case law authority in Arkansas. It is my opinion, however, that a court would in all likelihood conclude that the insertion of a "supplement" into each issue of a newspaper would comply with statutory and constitutional requirements. As stated above, there is no requirement that the publication appear in the "legal notices" section, or for that matter in any particular section of the newspaper. As long as the supplement is published with, and becomes an integral part of the newspaper, and complies with all other statutory requirements as to type size etc., it is my opinion that such publication would comply with law. Cf. generally, Gulf Coast Media v. The MobilePress Register, Inc., 470 So. 2d 1211 (Ala. 1985), (fact that a publication was inserted into, and distributed along with, another publication allowed the conclusion that publication was an integral part of the newspaper).[3]
It is my opinion that the answer to your third question is in all likelihood "no;" publication in a state-wide newspaper would comply with neither A.C.A. § 7-9-113 nor Arkansas Constitution, art. 19, § 22. The statute clearly provides that the publication shall be in four (4) weekly issues of some newspaper in eachcounty. Subsection (d) of the same statute later refers to "newspapers" (i.e. in the plural), by stating that "[i]t shall be the duty of the Secretary of State, in connection with a copy of the proposed amendment, to give notice in the same newspapers
that each elector on depositing his ballot at the election shall vote for or against the amendment." [Emphasis added.] This language, in my opinion, contemplates that the publication of these ballot issues will be in separate newspapers, in separate counties.
The issue with regard to constitutional amendments proposed by the General Assembly is even more clearly addressed by Arkansas Constitution, art. 19, § 22, which states that such measures shall be "published in at least one newspaper in each county, where a newspaper is published. . . ." In my opinion this language cannot be construed to authorize publication in one state-wide newspaper. The word "published," in this context, has been construed to mean the place where the principal office of the publication is located, not its area of circulation. SeeExpress Publishing Inc. v. City of Ketchum, 114 Idaho 114,753 P. 2d 1260 (1988); Oklahoma Journal Publishing Co. v. City ofOklahoma City, 620 P.2d 452 (Okla.Ct.App. 1979); and City ofPlainfield v. Courier News, 172 N.J. 171, 369 A.2d 513 (1976).But cf. Lewis v. Tate, Mayor, 210 Ark. 594, 197 S.W.2d 23
(1946), (holding that where Amendment 13 required publication of notice of bond election in some newspaper published in the municipality, substantial compliance was had by publication in newspaper published in nearby town in same county; otherwise, cities with no newspapers published therein could not vote on question of issuing bonds). It is therefore my opinion that the answer to your third question is "no."
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:ECW/cyh
[1] Although the publication of ballot issues, specifically constitutional amendments referred by the General Assembly under Arkansas Constitution, art. 19, § 22, is the subject of pending litigation in Walmsley v. McCuen, (Pulaski County Chancery Court 4th Div. No. 94-4645), it does not appear that the questions you have posed will be impacted by the litigation.
[2] Actually, there will be four ballot issues initiated by the people — three constitutional amendments and one referendum.
[3] In Gulf Coast, the court held that a "newspaper" called the "Baldwin People," which was inserted in and distributed with its parent newspaper, lost its individual character as a "newspaper" and became an integral part of the parent newspaper and thus was ineligible to publish legal notices in its own right.